Case 9:25-cv-81320-AMC   Document 1-2   Entered on FLSD Docket 10/24/2025   Page 1 of 69

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C   Page 1 of 69

IN THE CIRCUIT COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO.

CITIZENS PROPERTY INSURANCE
CORPORATION,

      Plaintiff,

v.

SAMSUNG ELECTRONICS
AMERICA, INC.,

      Defendant.

_____/

## COMPLAINT

COMES NOW, Plaintiff Citizens Property Insurance Corporation ("Citizens"), by and through undersigned counsel, and files this Complaint against Defendant Samsung Electronics America, Inc. ("Samsung"), and alleges the following:

## PARTIES

1.     Plaintiff is a Florida not-for-profit corporation and has its principal place of business in Tallahassee, Florida. At all times material hereto, Plaintiff was authorized to do business and issue policies of insurance in Florida.

2.     Plaintiff's subrogor and insured, Lauren Bellomo, is an individual resident of Florida. At all times relevant and material hereto, Ms. Bellomo owned the real property and improvements thereon located at 307 Southwest 13th Avenue, Boynton Beach, Florida (the "Property").

COZEN O'CONNOR
200 South Biscayne Boulevard, Suite 3000, Miami, Florida 33131

FILED: PALM BEACH COUNTY, FL, JOSEPH ABRUZZO, CLERK, 06/16/2025 03:35:59 PM

I HEREBY CERTIFY THAT THIS DOCUMENT IS A TRUE AND CORRECT COPY OF A DOCUMENT THAT WAS FILED AS A COURT RECORD WITH THE CLERK OF THE CIRCUIT COURT & COMPTROLLER, PALM BEACH COUNTY.

VISIT https://appsgp.mypalmbeachclerk.com/Services/EcertifyService/Helper/VerifyImage.html TO VALIDATE THIS DOCUMENT

Digitally signed by Michael A Caruso
Date: 2025.09.25 14:36:34 -04:00
Clerk of the Circuit Court & Comptroller, Palm Beach County
Location: 205 N. Dixie Highway, West Palm Beach, FL 33401

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 2 of 69

3.      At all times relevant and material hereto, Plaintiff issued an insurance policy to Ms. Bellomo that provided insurance coverage for certain perils causing damages to the Property, personal property therein, and other interests.

4.      A true and correct copy of the insurance policy between Plaintiff and Ms. Bellomo is attached hereto as "Exhibit A."

5.      Defendant Samsung is a New York corporation and has its principal place of business in Ridgefield Park, New Jersey. Defendant can be served with process via its registered agent C T Corporation System at 1200 South Pine Island Road, Plantation, Florida 33324.

## JURISDICTION AND VENUE

6.      Jurisdiction and venue are proper in this Court because the cause of action accrued in Palm Beach County and the damages suffered by Plaintiff exceed the jurisdictional limitation of this Court, exclusive of interest, costs, and attorney fees.

7.      This Court has subject matter jurisdiction pursuant to Fla. Stat. § 26.012.

8.      This Court has personal jurisdiction over Defendant pursuant to Fla. Stat. § 48.193.

9.      This Court has personal jurisdiction over Defendant because Defendant operates, conducts, engages in, and/or carries on its business in Florida.

10.     Venue is proper in this jurisdiction pursuant to Fla. Stat. §§ 47.011 and 47.051 because the cause of action accrued and the Property is located in Palm Beach County.

## COMMON ALLEGATIONS

11.     Ms. Bellomo acquired the Property during October 2022.

12.     On or about February 13, 2023, a fire broke out in the kitchen area of the Property, at/around a Samsung-brand stove range appliance (the "Samsung Stove"), which fire caused damage to the Property and the contents therein (the "Loss").

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 3 of 69

13.     Upon information and belief, at the time of the Loss, the Samsung Stove was approximately one-year old.

14.     The Loss occurred as a result of an inadvertent activation of the knob(s) of the Samsung Stove, because the Samsung Stove is defectively designed/manufactured by Defendant to include knobs and knob-related mechanisms that can be activated with the application of minimal force across minimal distances that do not meet the industry's manufacturing standards that are applicable and relevant to this type of kitchen appliance.

15.     Ms. Bellomo submitted a claim to Plaintiff for the damages caused by the Loss.

16.     Plaintiff paid and/or indemnified Ms. Bellomo for the damages that were caused by the Loss pursuant to Plaintiff's insurance policy with Ms. Bellomo.

17.     Plaintiff paid and/or indemnified Ms. Bellomo for damages caused by the Loss in satisfaction of his insurance claim.

18.     Plaintiff's payments to, or on behalf of, Ms. Bellomo totaled $191,853.97.

19.     Plaintiff is now subrogated to the rights of Ms. Bellomo by operation of law to the extent of its payments to Ms. Bellomo and is accordingly entitled to seek recovery from Defendant under principles of subrogation. *See generally State Farm Fla. Ins. Co. v. Loo*, 27 So. 3d 747 (Fla. 3d DCA 2010); *Schonau v. Geico Gen. Ins. Co.*, 903 So. 2d 285 (Fla. 4th DCA 2005); *Firestone Serv. Stores, Inc. v. Wynn*, 179 So. 175 (Fla. 1938).

20.     All conditions precedent to the filing of this civil action have been met, waived, and/or otherwise satisfied.

## COUNT I—STRICT PRODUCT LIABILITY

21.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-20 as though fully set forth herein.

COZEN O'CONNOR
200 South Biscayne Boulevard, Suite 3000, Miami, Florida 33131

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 4 of 69

22.     Defendant manufactured, retailed, and sold the Samsung Stove.

23.     Defendant intended the Samsung Stove be used for the ordinary purpose for which Ms. Bellomo used the Samsung Stove.

24.     Defendant designed and manufactured the Samsung Stove.

25.     Defendant placed the Samsung Stove into the stream of commerce.

26.     The Samsung Stove is a product that Defendant is in the business of manufacturing, retailing, marketing, and selling.

27.     The Samsung Stove was defective and unreasonably dangerous.

28.     The Samsung Stove was in a defective condition at the time it left Defendant's possession or control.

29.     The Samsung Stove was expected to and did reach the Property without substantial change to its condition.

30.     The Samsung Stove was used for its intended purpose and/or for a purpose that was reasonably foreseeable to Defendant.

31.     The Loss would not have occurred absent a product defect in the Samsung Stove.

32.     The Loss was not caused by improper maintenance or user abuse of the Samsung Stove.

33.     The defective and unreasonably dangerous condition of the Samsung Stove was the proximate cause of Plaintiff's damages.

WHEREFORE, Plaintiff Citizens demands judgment against Defendant Samsung for $191,853.97, plus interest, costs of this action as may be allowed by law, and for such other and further relief as this Court deems just and proper.

COZEN O'CONNOR
200 South Biscayne Boulevard, Suite 3000, Miami, Florida 33131

## COUNT II—NEGLIGENCE

34.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-20 as though fully set forth herein.

35.     Defendant owed a duty to the purchasers and/or users of the Samsung Stove to ensure it was reasonably safe for ordinary use.

36.     Defendant breached its duty to Plaintiff and Ms. Bellomo by:

a.      Failing to ensure the design of the Samsung Stove was free of defects;

b.      Failing to ensure the Samsung Stove was manufactured free of defects;

c.      Failing to ensure the Samsung Stove was retailed/sold free of defects;

d.      Failing to ensure the Samsung Stove was designed to limit the risk of inadvertent activation of its knobs;

e.      Failing to properly warn of latent defects or hazards involving the Samsung Stove; and/or

f.      As otherwise uncovered or revealed during discovery.

37.     Defendant should have foreseen that if it breached its duty to Plaintiff and Ms. Bellomo, the Samsung Stove would pose a danger to the Property, would not operate as intended, and the probable consequence(s) would be damage to the Property.

38.     As a direct and proximate results of Defendant's breaches, the Samsung Stove failed to operate properly and perform its intended functions thereby causing the Loss.

WHEREFORE, Plaintiff Citizens demands judgment against Defendant Samsung for $191,853.97, plus interest, costs of this action as may be allowed by law, and for such other and further relief as this Court deems just and proper.

COZEN O'CONNOR
200 South Biscayne Boulevard, Suite 3000, Miami, Florida 33131

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 6 of 69

**JURY TRIAL DEMAND**

Plaintiff requests a jury trial on issues so triable.

DATED: June 16, 2025

Respectfully submitted,

**COZEN O'CONNOR**

By:     */s/ Cameron T. Ewing*
Cameron T. Ewing, Esq.
Fla. Bar No. 1039900
200 South Biscayne Boulevard, Suite 3000
Miami, Florida 33131
T: (305) 397 − 0849
E: cewing@cozen.com

*Counsel for Plaintiff Citizens*

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 7 of 69

# EXHIBIT "A"

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 8 of 69

**CITIZENS PROPERTY INSURANCE CORPORATION**
2101 MARYLAND CIRCLE
TALLAHASSEE, FL 32303
TELEPHONE: (888) 685-1555



## AFFIDAVIT OF CUSTODIAN OF RECORDS
7052(Florida Evidence Code §§ 90.803(6) and 90.902(11), Fla. Stat.)

1. I, **Sandashia Dennis**, am the Records Assistant for Citizens Property Insurance Corporation (Citizens) and in such capacity I have the authority to certify the attached records.

2. Attached hereto is a copy of Citizens' Policy No. **08413952** of Policyholder **LAUREN BELLOMO.**

3. lar course of business, and it was the regular practice of Citizens for an employee or representative with knowledge of the act recorded to make the record or transmit information thereof to be included in such record.

4. This record was made at or near the time of the act.

5. The records attached hereto are exact duplicates of the original.

Under penalties of perjury, I declare that I have read the foregoing Affidavit and that the facts stated in it are true.

June 13, 2025
Date

**Sandashia Dennis**

Digitally signed by
Sandashia Dennis
Date: 2025.06.13
10:53:15 -04'00'

**Sandashia Dennis**
Records Assistant
Citizens Property Insurance Corporation

Carlos Beruff, Chairman, Manatee County ● Josh Becksmith, St. Johns County ● Jason Butts, Pinellas County
Jillian Hasner, Palm Beach County ● Erin Knight, Miami-Dade County ● JoAnne Leznoff, Nassau County
Charlie Lydecker, Volusia County ● Nelson Telemaco, Broward County ● M. Scott Thomas, St. Johns County
Timothy M. Cerio, President/CEO and Executive Director



Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C  Page 9 of 69

**CITIZENS PROPERTY INSURANCE CORPORATION**
301 W BAY STREET, SUITE 1300
JACKSONVILLE FL 32202-5142

## Homeowners HO-3 Special Form Policy - Declarations

| POLICY NUMBER: 08413952 - 1 | POLICY PERIOD: | FROM | 10/26/2022 | TO | 10/26/2023 |
|---|---|---|---|---|---|

at 12:01 a.m. Eastern Time at the Location of the Residence Premises

**Transaction:** AMENDED DECLARATIONS                                      **Effective:** 11/08/2022

| Named Insured and Mailing Address: | Location Of Residence Premises: | Agent:   Fl. Agent Lic. #: W168206 |
|---|---|---|
| **First Named Insured:**<br>Lauren Bellomo<br>307 SW 13TH AVE<br>BOYNTON BEACH, FL 33435<br>Phone Number: 201-364-4284 | 307 SW 13TH AVE<br>BOYNTON BEACH FL 33435-5960<br>**County:** PALM BEACH | SHROFF INSURANCE SERVICES, INC<br>DUSTYN SHROFF<br>2267 SOUTH UNIVERSITY DRIVE<br>DAVIE, FL 33324<br>Phone Number: 954-316-4662<br>**Citizens Agency ID#:** 32934 |

**Primary Email Address:**
lauren@btastax.com

**Additional Named Insured:** Please refer to "ADDITIONAL NAMED INSURED(S)" section for details

Coverage is only provided where a premium and a limit of liability is shown

**All Other Perils Deductible: $2,500**                    **Hurricane Deductible: $6,200 (2%)**

|  | LIMIT OF LIABILITY | ANNUAL PREMIUM |
|---|---|---|
| **SECTION I - PROPERTY COVERAGES** | | |
| A. Dwelling : | $310,000 | ▮ |
| B. Other Structures: | $6,200 | |
| C. Personal Property: | $77,500 | |
| D. Loss of Use: | $31,000 | |
| **SECTION II - LIABILITY COVERAGES** | | |
| E. Personal Liability: | $100,000 | ▮ |
| F. Medical Payments: | $2,000 | ▮ |
| **OTHER COVERAGES** | | |
| Ordinance or Law Limit (25% of Cov A) | (See Policy) | ▮ |
| | **SUBTOTAL:** | ▮ |

**Florida Hurricane Catastrophe Fund Build-Up Premium:**                     ▮

**Premium Adjustment Due To Allowable Rate Change:**                     ▮

**MANDATORY ADDITIONAL CHARGES:**

2022 Florida Insurance Guaranty Association (FIGA) Regular Assessment
2022-B Florida Insurance Guaranty Association (FIGA) Regular Assessment     ▮
Emergency Management Preparedness and Assistance Trust Fund (EMPA)
Tax-Exempt Surcharge

**TOTAL POLICY PREMIUM INCLUDING ASSESSMENTS AND ALL SURCHARGES:**     ▮

The portion of your premium for:

Hurricane Coverage is  ▮                    Non-Hurricane Coverage is  ▮

**Authorized By:** DUSTYN SHROFF                          **Processed Date:** 11/15/2022

| DEC HO3 12 19 | First Named Insured | Page 1 of 4 |
|---|---|---|



CITIZENS PROPERTY INSURANCE CORPORATION
301 W BAY STREET, SUITE 1300
JACKSONVILLE FL 32202-5142

## Homeowners HO-3 Special Form Policy - Declarations

**Policy Number:** 08413952 - 1

**First Named Insured:** Lauren Bellomo

**POLICY PERIOD:   FROM**   10/26/2022   **TO**   10/26/2023

at 12:01 a.m. Eastern Time at the Location of the Residence Premises

**Forms and Endorsements applicable to this policy:**

CIT 27 06 13, IL P 001 01 04, CIT 24 07 08, CIT HO 01 09 06 22, CIT 04 86 02 21, CIT 04 85 02 21, CIT 23 70 07 08, CIT 04 96 02 16, CIT HO-3 02 22

| Rating/Underwriting Information | | | |
|---|---|---|---|
| Year Built: | 1973 | Protective Device - Burglar Alarm: | No |
| Town / Row House: | No | Protective Device - Fire Alarm: | No |
| Construction Type: | Masonry | Protective Device - Sprinkler: | None |
| BCEGS: | Ungraded | No Prior Insurance Surcharge: | No |
| Territory / Coastal Territory: | 038 / 96 | Terrain: | B |
| Wind / Hail Exclusion: | No | Roof Cover: | FBC Equivalent |
| Municipal Code - Police: | 191 | Roof Cover - FBC Wind Speed: | N/A |
| Municipal Code - Fire: | 191 | Roof Cover - FBC Wind Design: | N/A |
| Occupancy: | Owner Occupied | Roof Deck Attachment: | Level C |
| Use: | Primary | Roof-Wall Connection: | Toe Nail |
| Number of Families: | 1 | Secondary Water Resistance: | No |
| Protection Class: | 2 | Roof Shape: | Gable |
| Distance to Hydrant (ft.): | 600 | Opening Protection: | Class A |
| Distance to Fire Station (mi.): | 1 | | |

A premium adjustment of ████ is included to reflect the building's wind loss mitigation features or construction techniques that exists.

A premium adjustment of $0 is included to reflect the building code effectiveness grade for your area. Adjustments range from a 2% surcharge to a 13% credit.

The Total Charge For This Endorsement is $0

| ADDITIONAL NAMED INSURED(S) | |
|---|---|
| Name | Address |
| No Additional Named Insureds | |

| ADDITIONAL INTEREST(S) | | | |
|---|---|---|---|
| # | Interest Type | Name and Address | Loan Number |
| 1 | 1st Mortgagee | CROSSCOUNTRY MORTGAGE LLC ISAOA ATIMA C/O DOVENMUEHLE MORTGAGE INC PO BOX 961292 FORT WORTH, TX 76161-0292 | 1495036582 |

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 10 of 69



Unique Code : CAA-FBH-BCAJ-CCCHCABJE-BCJCDBI-C Page 11 of 69

**CITIZENS PROPERTY INSURANCE CORPORATION**
301 W BAY STREET, SUITE 1300
JACKSONVILLE FL 32202-5142

## Homeowners HO-3 Special Form Policy - Declarations

**Policy Number:** 08413952 - 1

**First Named Insured:** Lauren Bellomo

**POLICY PERIOD:   FROM   10/26/2022   TO   10/26/2023**
at 12:01 a.m. Eastern Time at the Location of the Residence Premises

# FLOOD COVERAGE IS NOT PROVIDED BY THIS POLICY.

---

# THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.

---

# YOUR POLICY PROVIDES COVERAGE FOR A CATASTROPHIC GROUND COVER COLLAPSE THAT RESULTS IN THE PROPERTY BEING CONDEMNED AND UNINHABITABLE. OTHERWISE, YOUR POLICY DOES NOT PROVIDE COVERAGE FOR SINKHOLE LOSSES. YOU MAY PURCHASE ADDITIONAL COVERAGE FOR SINKHOLE LOSSES FOR AN ADDITIONAL PREMIUM.

---

# LAW AND ORDINANCE: LAW AND ORDINANCE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. PLEASE DISCUSS WITH YOUR INSURANCE AGENT.

---

| DEC HO3 12 19 | First Named Insured | Page 3 of 4 |



**CITIZENS PROPERTY INSURANCE CORPORATION**
**301 W BAY STREET, SUITE 1300**
**JACKSONVILLE FL 32202-5142**

## Homeowners HO-3 Special Form Policy - Declarations

**Policy Number:** 08413952 - 1

**First Named Insured:** Lauren Bellomo

**POLICY PERIOD:   FROM**   10/26/2022   **TO**   10/26/2023

at 12:01 a.m. Eastern Time at the Location of the Residence Premises

# FLOOD INSURANCE: YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE. YOUR HOMEOWNER'S INSURANCE POLICY DOES NOT INCLUDE COVERAGE FOR DAMAGE RESULTING FROM FLOOD EVEN IF HURRICANE WINDS AND RAIN CAUSED THE FLOOD TO OCCUR. WITHOUT SEPARATE FLOOD INSURANCE COVERAGE, YOU MAY HAVE UNCOVERED LOSSES CAUSED BY FLOOD. PLEASE DISCUSS THE NEED TO PURCHASE SEPARATE FLOOD INSURANCE COVERAGE WITH YOUR INSURANCE AGENT.

## TO REPORT A LOSS OR CLAIM CALL 866.411.2742

IN CASE OF LOSS TO COVERED PROPERTY, YOU MUST TAKE REASONABLE EMERGENCY MEASURES SOLELY TO PROTECT THE PROPERTY FROM FURTHER DAMAGE IN ACCORDANCE WITH THE POLICY PROVISIONS.

PROMPT NOTICE OF THE LOSS MUST BE GIVEN TO US OR YOUR INSURANCE AGENT. EXCEPT FOR REASONABLE EMERGENCY MEASURES, THERE IS NO COVERAGE FOR REPAIRS THAT BEGIN BEFORE THE EARLIER OF: (A) 72 HOURS AFTER WE ARE NOTIFIED OF THE LOSS, (B) THE TIME OF LOSS INSPECTION BY US, OR (C) THE TIME OF OTHER APPROVAL BY US.

THIS POLICY CONTAINS LIMITS ON CERTAIN COVERED LOSSES, ALL SUBJECT TO THE TERMS AND CONDITIONS OF YOUR POLICY. THESE LIMITS MAY INCLUDE A $10,000 LIMIT ON COVERAGE FOR COVERED LOSSES CAUSED BY ACCIDENTAL DISCHARGE OR OVERFLOW OF WATER OR STEAM FROM SPECIFIED HOUSEHOLD SYSTEMS, SEEPAGE OR LEAKAGE OF WATER OR STEAM, CONDENSATION, MOISTURE OR VAPOR, AS DESCRIBED AND INSURED IN YOUR POLICY (HEREAFTER COLLECTIVELY REFERRED TO AS ACCIDENTAL DISCHARGE OF WATER IN THIS PARAGRAPH). AS ANOTHER EXAMPLE,THERE IS ALSO LIMIT OF $3,000 APPLICABLE TO REASONABLE EMERGENCY MEASURES TAKEN TO PROTECT COVERED PROPERTY FROM FURTHER DAMAGE BY ACCIDENTAL DISCHARGE OF WATER. THE AMOUNT WE PAY FOR THE NECESSARY REASONABLE EMERGENCY MEASURES YOU TAKE SOLELY TO PROTECT COVERED PROPERTY FROM FURTHER DAMAGE BY ACCIDENTAL DISCHARGE OF WATER WILL BE DEDUCTED FROM THE $10,000 LIMIT ON COVERAGE FOR ACCIDENTAL DISCHARGE OF WATER.

INFORMATION ABOUT YOUR POLICY MAY BE MADE AVAILABLE TO INSURANCE COMPANIES AND/OR AGENTS TO ASSIST THEM IN FINDING OTHER AVAILABLE INSURANCE MARKETS.

PLEASE CONTACT YOUR AGENT IF THERE ARE ANY QUESTIONS PERTAINING TO YOUR POLICY. IF YOU ARE UNABLE TO CONTACT YOUR AGENT, YOU MAY REACH CITIZENS AT 866.411.2742.

| DEC HO3 12 19 | First Named Insured | Page 4 of 4 |
|---|---|---|

Unique Code : CAA-FBH-BCAJ-CCHCABJE-BCJCDBI-C Page 12 of 69

Unique Code : CAA-FBH-BCAJJ-CCHCABJE-BCJCDBI-C Page 13 of 69

**HOMEOWNERS**
**CIT 04 85 02 21**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
TO REPORT A LOSS OR CLAIM CALL 866.411.2742

### EMERGENCY WATER REMOVAL SERVICES

At our option, we may offer you the Program described in this "Endorsement". If the offer is made by us, with your consent a "Contractor(s)" that is participating in the Program will contact you. The "Contractor" will provide necessary reasonable emergency water removal services, as described below, solely to protect your covered property under Coverage **A**, Coverage **B** and Coverage **C** from further damage.

Your Policy has specific requirements about notifying us in the event of direct physical loss or damage to property, which are found in SECTION I –CONDITIONS, Condition **B.** Duties After Loss.

Should you have concerns regarding your "Contractor" at any time during the process of emergency water removal provided under this "Endorsement", you may directly contact your Citizens' claim representative at the telephone number provided to you, or call our toll free Call-Center at 866.411.2742 and a representative will be available to discuss your concerns.

---

### CONSENT

At our option and with your consent to participate in the services provided under this "Endorsement", the following provisions of the Policy are either added or amended.

Your consent provided on or after reporting a claim of loss or damage and the provisions of this "Endorsement" are only for that reported claim of loss or damage.

The provisions of this "Endorsement" do not apply to any subsequent claim of loss or damage, unless we opt to participate in the services provided under this "Endorsement" and you provide another consent as described above.

### AGREEMENT

The following is added:

In the event of a direct physical loss to property covered under Coverage **A**, Coverage **B** or Coverage **C** located on the "residence premises" caused by accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, a participating "Contractor" will be in contact with you to provide only necessary reasonable emergency water extraction and drying services solely to protect property from further damage, as provided under this "Endorsement".

The following applies:

1. The services provided under this "Endorsement" are limited to only necessary reasonable emergency water extraction and drying services made solely to protect property from further damage.

2. The services provided under this "Endorsement" do not include any replacement, repair or the rebuilding of the dwelling or other structures and do not include any replacement, repair or the rebuilding of the dwelling or other structures necessary to perform the emergency water extraction and drying services.

   When such replacement, repair or the rebuilding is necessary, all other provisions of your Policy apply.

3. SECTION I – CONDITIONS, Condition **I.** Our Option in **CIT HO-3** does not apply to the services we or the "Contractor" provide under this "Endorsement".

4. Your deductible does not apply to the services provided under this "Endorsement".

5. Any payment for emergency water removal services provided under this "Endorsement" will not be deducted from the $3,000 limit under SECTION I - PROPERTY COVERAGES **F.1.** Reasonable Emergency Measures and will not be deducted from the $10,000 limit on coverage under SECTION I – PERILS INSURED AGAINST **A.** Coverage **A** - Dwelling And Coverage **B** – Other Structures paragraphs **A.3.** and **A.6.**, in **CIT HO-3**.

---

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C  Page 14 of 69

All other covered emergency water removal services not provided under this "Endorsement", after application of any applicable deductible, will be included in and limited to the $3,000 limit under Section **I** – PROPERTY COVERAGES **F.1.** Reasonable Emergency Measures which will be deducted from the $10,000 limit on coverage provided in paragraphs **A.3.** and **A.6.** under SECTION **I** – PERILS INSURED AGAINST **A.** Coverage **A** - Dwelling And Coverage **B** – Other Structures.

6. This "Endorsement" does not increase any limit of liability applicable to the damaged covered property.

7. We will make payment directly to the "Contractor" as described in SECTION **I** - CONDITIONS, Condition **J.** Loss Payment of this "Endorsement" for services the "Contractor" provides under this "Endorsement".

8. Any services provided under this "Endorsement" for loss or damage that is not covered under your Policy does not cause or create coverage.

9. In consenting to participate in the services provided under this "Endorsement", you acknowledge that Citizens is not a party to the contract between you and the Program "Contractor".

## DEFINITIONS

The following definition is added:

The term "Endorsement" shall mean "form **CIT 04 85**" and shall mean "form **CIT 04 85**" in the paragraph(s) added or replaced in **CIT HO-3** under this "Endorsement".

The following definition is added regarding the services provided by the "Contractor" under this "Endorsement":

"Contractor" means a person, entity or company, including their employees, agents, representatives and general or specialty contractors who is a member of the network engaged by Citizens to provide the services under this "Endorsement".

## SECTION I – CONDITIONS

Condition **B. Duties After Loss**

The following paragraphs are added to Condition **B.** Duties After Loss in **CIT HO-3**:

Your duties under Condition **B.** Duties After Loss in **CIT HO-3** apply, whether under this "Endorsement" you or your representative:

1. Prevent the "Contractor" from providing or completing the services, or

2. Have another party perform or contract to perform a duty on your behalf.

The services provided under this "Endorsement" are not a loss inspection. All conditions stipulated in SECTION **I** – CONDITIONS, Condition **B.** Duties After Loss, paragraph **B.1.** in **CIT HO-3** apply.

Our option and your consent to participate in the services provided under this "Endorsement" are material parts of this "Endorsement". Under no circumstances does this "Endorsement" relieve you or us of any duties and obligations under the Policy not specifically amended, added or deleted in this "Endorsement".

Condition **J. Loss Payment**

Regarding the services performed under this "Endorsement", Condition **J.** Loss Payment paragraphs **1.**, **2.** and **3.** are deleted in **CIT HO-3** and replaced with paragraph **1.** in **J.** below:

**J. Loss Payment**

1. We will pay the "Contractor" directly.

## SECTION I AND II – CONDITIONS

Condition **I. Notification Regarding Access**

The following is added to Condition **I.** Notification Regarding Access in **CIT HO-3** as regards this "Endorsement".

Our offer and your consent to participate in the EMERGENCY WATER REMOVAL SERVICES "Endorsement" requires agreement to a mutual schedule with you, and your permission for the "Contractor" to enter the "Residence Premises" at the address designated in your Declarations as the Location of Residence Premises, for the purpose of inspecting your loss and providing the services under this "Endorsement".

If there is no permission or agreement, this "Endorsement" does not apply and all other provisions of your policy apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission **CIT 04 85 02 21**

Unique Code : CAA-FBH-BCAJJ-CCHCABJE-BCJCDBI-C Page 15 of 69

**TERMINATION OF CONSENT**

1. Your consent to participate in this "Endorsement" is terminated if you or your representative:

   a. Notify us or the "Contractor" to stop providing the services or you or your representative prevent the "Contractor" from providing or completing the emergency water removal services under this "Endorsement".

   b. Fail to sign or execute any contract(s) or authorization(s) provided by the "Contractor" for emergency water removal services.

   Upon termination of your consent, this "Endorsement" no longer applies, and instead all other provisions of your Policy apply.

   Additionally, the following also applies:

   a. All duties required under SECTION I – CONDITIONS, Condition **B.** Duties After Loss in **CIT HO-3** will apply, which may include water removal if needed. However, we will make payment directly to the "Contractor" as described in SECTION I - CONDITIONS, Condition **J.** Loss Payment in of this "Endorsement" for any services the "Contractor" provides under this "Endorsement".

   b. The deductible described under SECTION I – CONDITIONS, Condition **R.** Deductible in **CIT HO-3** will apply, except we will not apply a deductible to any part of our loss settlement with you that represents the payment we make to the "Contractor" for the services the "Contractor" provides under this "Endorsement".

**POLICY PROVISIONS**

The following are added:

This "Endorsement" does not cover any services you or your representative obtain from other providers or contractors. Instead all other provisions of your Policy apply regarding the services you or your representative obtain from other service providers or contractors.

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 16 of 69

**HOMEOWNERS**
**CIT 04 86 02 21**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
TO REPORT A LOSS OR CLAIM CALL 866.411.2742

### MANAGED REPAIR CONTRACTOR NETWORK PROGRAM

At our option, we may offer you the Program described in this "Endorsement". If the offer is made by us, a "Contractor" that is participating in the Program will contact you. We or the "Contractor(s)" will provide a scope of repairs for covered damages to your dwelling and other structures, covered under Coverage **A** or **B**, for damage or loss from a covered peril described in your Policy. To participate in the Program and accept our offer, you must sign and return the Program Consent Form provided by us. As a Program participant, you will directly contract with the "Contractor" to make the repairs of covered damages provided in the scope you received.

Your Policy has specific requirements about notifying us, in the event of direct physical loss or damage to property, which are found in SECTION I – CONDITIONS, Condition **B.** Duties After Loss.

Should you have concerns regarding your "Contractor" at any time during the repair, replacement or rebuilding process provided under this "Endorsement", you may directly contact your Citizens' claim representative at the telephone number provided to you, or call our toll free Call-Center at 866.411.2742 and a representative will be available to discuss your concerns.

### CONSENT

You must provide written consent to participate in this Program.

Your written consent to participate in this Program can only be provided to us by completing and returning to us, on or after reporting a claim of loss or damage, the Program Consent Form provided to you by Citizens.

The provisions of this "Endorsement" are only for that reported claim of loss or damage. The provisions of this "Endorsement" do not apply to any subsequent claim of loss or damage, unless we exercise our option to utilize the Program and you provide another written consent in a Program Consent Form provided by Citizens.

### PROGRAM PARTICIPATION

1. Your participation in the Program as described in this Endorsement and your Policy is contingent upon the property, prior to or at the time of the loss, being in a condition that does not impair or prevent the Program "Contractor's" ability to repair the covered loss.

2. Your participation in the Program is terminated if we or the Program "Contractor" determine:

   a. Conditions are present that prevent repair, replacement or rebuilding of the property from starting or being completed; or

   b. The property is in a condition that impairs or prevents the Program "Contractor's" ability to repair the covered loss.

3. If the $10,000 limit on coverage under SECTION I – PERILS INSURED AGAINST **A.** Coverage **A** - Dwelling And Coverage **B** – Other Structures paragraphs **A.3.** and **A.6.** in **CIT HO-3** is applicable to the covered loss, the $10,000 limit on coverage does not apply while you are participating in the Program.

   However, if your participation in the Program is terminated under **1.** or **2.** above or terminated as described elsewhere in this "Endorsement" and the $10,000 limit on coverage is applicable to the covered loss, the $10,000 limit on coverage applies.

4. You are not eligible to participate in the Program if:

   a. You incur any costs for repairs or you start any repairs, replacement or rebuilding of property covered under Coverage **A** or **B**, prior to our receipt of your written consent to participate in the Program and the execution of the contract between you and the "Contractor"; or

   b. You request participation in the Program after you have incurred any costs for repairs or you have started any repairs, replacement or rebuilding of property described under Coverage **A** or **B**.

   In this event, the most we will pay is the applicable limit of liability or if applicable the $10,000 limit on coverage, as described and provided in your Policy.

**CIT 04 86 02 21**        Includes copyrighted material of Insurance Services Office, Inc., with its permission        **Page 1 of 5**

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 17 of 69

**AGREEMENT**

The following, subject to the PROGRAM PARTICIPATION provisions of this "Endorsement", are added:

1. In the event of a direct physical loss to property covered under Coverage **A** or Coverage **B** under this "Endorsement":

   a. We or the "Contractor" will provide you a scope of repairs for covered damages.

   b. As necessary, we will provide you a revised scope(s) of repairs for covered damages describing any additional covered loss or damages discovered during the repair, replacement or rebuilding of property covered under Coverage **A** or Coverage **B** that are not included in the original scope of repairs for covered damages.

   Together, these scopes under **a.** and **b.** above are your scope of repairs for covered damages to property covered under Coverage **A** or Coverage **B**.

2. To participate in the Program and accept our offer, you must sign and return the Program Consent Form provided by us and directly enter into a contract with the Program's "Contractor" to repair, replace or rebuild the damaged property included in the scope of repairs for covered damages.

   a. The contract between you and the "Contractor" will be for the repairs, replacement or rebuilding of the damaged property covered under Coverage **A** or Coverage **B** included in the scope of repairs for covered damages. We are not a party to the contract between you and the "Contractor" and the "Contractor" is not an agent of Citizens.

   b. Payment for the repairs, replacement or rebuilding of the damaged property in the contract described in paragraph **2.a.** above will be paid directly to the "Contractor" as described in SECTION **I** – CONDITIONS, Condition **J.** Loss Payment of this "Endorsement", less any applicable deductible.

3. Until you provide written consent to participate in the Program and execute the contract with the "Contractor", the $10,000 limit on coverage under SECTION **I** – PERILS INSURED AGAINST **A.** Coverage **A** - Dwelling And Coverage **B** – Other Structures paragraphs **A.3.** and **A.6.** in **CIT HO-3** will apply if the covered loss results from a covered peril described in paragraph **A.2.b.(6)** in **CIT HO-3** under Section **I** – Perils Insured Against, **A.** Coverage **A** – Dwelling And Coverage **B** – Other Structures.

   a. Payment for Reasonable Emergency Measures under SECTION **I** – Property Coverages paragraph **F.1.**, which occurs in the same loss will be deducted from the $10,000 limit on coverage.

   b. The $10,000 limit on coverage applies if:

      (1) You do not provide written consent to participate in the Program;

      (2) Your participation in the Program has been terminated by you or us; or

      (3) You make a subsequent request to participate in the Program for the same loss and your request is not accepted by us.

4. Any payment made by us to you for a loss, less any payment made by us to you under SECTION **I** - PROPERTY COVERAGES **F.** Reasonable Emergency Measures for that loss, must be returned to us if for the same loss if:

   a. The Program is re-offered to you and you consent to participate in the Program; or

   b. A subsequent request by you to participate in the Program is accepted by us.

5. If a contract has been executed between you and the "Contractor" as described in the "Endorsement", you will be responsible for payment to the "Contractor" of the deductible described in SECTION **I** – CONDITIONS, Condition **R.** Deductible in **CIT HO-3**.

6. We will pay the "Contractor" directly as described in SECTION **I** – CONDITIONS, Condition **J.** Loss Payment of this "Endorsement", less the deductible you are responsible for in **5.** above, for the amount, if any, owed the "Contractor" for their performance of repairs, replacement or rebuilding of covered property covered under Coverages **A** or **B** indicated in the scope of repairs for covered damages.

7. In no event will you be responsible for paying more than one deductible in any one loss.

Unique Code : CAA-FBH-BCAJ-CCCHCABJE-BCJCDBI-C Page 18 of 69

8. If the covered loss results from a covered peril other than the peril described in paragraph **A.2.b.(6)** in **CIT HO-3** under Section **I** – Perils Insured Against, **A.** Coverage **A** – Dwelling And Coverage **B** – Other Structures, the applicable limit of liability shown in your Declarations will apply instead.

9. This "Endorsement" does not:

   a. Increase the limit of liability that applies to the covered property;

   b. Alter or change any Additional Coverage in **G.** Additional Coverages under SECTION **I** - PROPERTY COVERAGES and each Additional Coverage, including their applicable limits of liability, shall apply to covered loss as described and provided in **CIT HO-3**; or

   c. Alter or change the deductible provision in your Policy.

10. Your duties under SECTION **I** – CONDITIONS, Condition **B.** Duties After Loss in **CIT HO-3** apply, whether under this "Endorsement" you or your representative:

    a. Notify us or the "Contractor" to stop repairs, replacement or rebuilding of property covered under Coverage **A** or **B**;

    b. Prevent the "Contractor" from providing or completing the repairs, replacement or rebuilding of property covered under Coverage **A** or **B**; or

    c. Have another party perform or contract to perform a duty on your behalf.

11. Any dispute between you and us, regarding the scope of repairs for covered damages of property covered under Coverage **A** or **B** is subject to SECTION **I** – CONDITIONS, Condition **F.2.** Appraisal as described in this "Endorsement".

    The Appraisal may be requested by you or by us.

12. Our option and your consent to participate in the Program provided under this "Endorsement" are material parts of this "Endorsement". Under no circumstances does this "Endorsement" relieve you or us of any duties and obligations under the Policy not specifically amended, added or deleted in this "Endorsement".

**TERMINATION OF CONSENT**

1. If you have provided written consent in a Program Consent Form to participate in this "Endorsement", you may withdraw your consent by notifying us any time prior to you signing any contract(s) or authorization(s) provided by the "Contractor" for the repairs, replacement or rebuilding of property covered under Coverage **A** or **B** included in the scope of repairs for covered damages we or the "Contractor" provide to you under this "Endorsement".

2. If you or your representative notify us or the "Contractor" to stop providing or completing the repairs, replacement or rebuilding of property covered under Coverage **A** or **B** in the scope of repairs for covered damages under this "Endorsement", this constitutes termination of your consent to the Program provided under this "Endorsement".

3. If you or your representative prevent the "Contractor" from providing or completing the repairs, replacement or rebuilding of property covered under Coverage **A** or **B** in the scope of repairs for covered damages under this "Endorsement", this constitutes termination of your consent to the Program provided under this "Endorsement".

4. If you fail to execute the contract provided by the "Contractor" within ten business days from the date the contract is delivered to you, this constitutes termination of your consent to the Program provided under this "Endorsement".

5. Upon the termination of your consent, this "Endorsement" no longer applies and all other provisions of your Policy apply, including but not limited to:

   a. All duties required under SECTION **I** – CONDITIONS, Condition **B.** Duties After Loss in **CIT HO-3**.

   b. Our option to repair, rebuild or replace property as described under SECTION **I** – CONDITIONS, Condition **I.** Our Option in **CIT HO-3**.

6. When participation in the Program is terminated, the Program "Contractor" will stop repairs, replacement and rebuilding of the property.

   In this event, if the loss is subject to the $10,000 limit on coverage described in paragraphs **A.3.** and **A.6.** in **CIT HO-3** under SECTION **I** – PERILS INSURED AGAINST **A.** Coverage **A** – Dwelling And Coverage **B** – Other Structures, the $10,000 limit on coverage applies to the loss.

Unique Code : CAA-FBH-BCAJ-CCHCABJE-BCJCDBI-C Page 19 of 69

**DEFINITIONS**

The following definition is added:

The term "Endorsement" means "form **CIT 04 86**" and means "form **CIT 04 86**" in the paragraph(s) in this "Endorsement" that are added or replaced in **CIT HO-3**.

The following definition is added regarding the repair, replacement or rebuilding of property covered under Coverage **A** or Coverage **B** made by the "Contractor" under this "Endorsement":

"Contractor" means a person, entity or company, including their employees, agents, representatives and general or specialty contractors who is a member of the network engaged by Citizens to inspect and document your loss, prepare a scope(s) for repair of covered damages covered under Coverage **A** or **B** and to provide the repair, replacement or rebuilding of property covered under Coverage **A** or **B**, under this "Endorsement".

**SECTION I – CONDITIONS**

The following is added to Coverage **D** - Loss Of Use in **CIT HO-3** regarding the repair, replacement or rebuilding of property covered under Coverage **A** or Coverage **B** under this "Endorsement":

Under **1.** Additional Living Expense or **2.** Fair Rental Value:

a. We will not pay for any time period where you, any other "insured" seeking coverage or a representative of either, act in a manner to unreasonably obstruct or unreasonably delay the "Contractor" from repairing, replacing or rebuilding the property that is subject to the scope of repairs for covered damages under this "Endorsement"; or

b. We will not pay for any time period caused by:

(1) The performance by the "Contractor" of additional repairs, replacement or rebuilding of property requested by you, any other "insured" seeking coverage or a representative of either, that are not included in the scope of repairs for covered damages provided under this "Endorsement"; or

(2) To correct loss or damages existing prior to or at the time of loss".

In no event will we make duplicate payments under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use under SECTION **I** – PROPERTY COVERAGES, **D.** Coverage **D** – Loss Of Use, for the same loss or damage or for the same loss occurrence.

Condition **C.** Loss Settlement

The following paragraphs are added to Condition **C.** Loss Settlement in **CIT HO-3** regarding the repair, replacement or rebuilding of property covered under Coverage **A** or Coverage **B** under this "Endorsement":

If the "Contractor" provides under this "Endorsement", repairs, replacement or the rebuilding of property covered under Coverage **A** or Coverage **B** for covered loss or damage caused by a peril insured against, Condition **C.** Loss Settlement paragraph **C.2.d.** in **CIT HO-3** will not apply.

For all remaining loss or damage that is not repaired, replaced or rebuilt under this "Endorsement", this "Endorsement" is not applicable and all other provisions of your Policy apply.

Condition **F.2.** Appraisal

For disputes arising under the application of this "Endorsement" Condition **F.2.** Appraisal is deleted in **CIT HO-3** and is replaced by the following regarding the scope of repairs for covered damages that describes the repair, replacement or rebuilding of property covered under Coverage **A** or Coverage **B** under this "Endorsement":

2. Appraisal.

For purposes of this "Endorsement", Appraisal shall address any dispute between you and us as to the scope of repairs for covered damages, and only applies to the resolution of disputes regarding the repair, replacement or rebuilding of damaged covered property under Coverage **A** or **B** in the scope of repairs for covered damages under this "Endorsement".

a. If you and we fail to agree on the scope of repairs for covered damages, either party may demand appraisal.

b. If you or we demand appraisal, the demand must be in writing and shall include a detailed scope of repairs for covered damages which identifies each item of damaged property, describes the extent of the damage and indicates whether each item should be repaired, rebuilt or replaced.

c. Each party will choose a competent appraiser within 20 days after receiving a written demand for appraisal from the other.

d. If the appraisers submit a written report of an agreement to us, the scope of repairs for covered damages agreed upon will be the scope of repairs for covered damages for purposes of this "Endorsement".

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 20 of 69

e. If they fail to agree on a scope of repairs for covered damages within 30 days, unless the period of time is extended by mutual agreement between you and us, the two appraisers will choose a competent and impartial umpire. If they cannot agree upon an umpire within 15 days, you or we may request in writing that the choice be made by a judge of a court of record located in the county described in the "Location of Residence Premises" of the Declarations.

f. The two appraisers will submit their differences to the umpire. A decision agreed to by any two will set the scope of repairs for covered damages for purposes of this "Endorsement".

g. The appraisal award will be in writing and shall include the following:

(1) A detailed list, which includes the description and the grade of material for the repairs, replacement or rebuilding of each specific item included in the award from the appraisal findings; and

(2) A statement of "This award is made subject to the terms and conditions of the policy."

h. Each party will:

(1) Pay its own appraiser, including their fees and expenses associated with their appraisal services; and

(2) Pay reasonable fees and reasonable expenses of the appraisal and umpire equally.

i. Satisfaction of the award or any part of the award will be made in accordance with Condition **J.** Loss Payment described in this "Endorsement".

j. For resolution of disputes unrelated to this "Endorsement", SECTION **I** – CONDITIONS, Condition **F.2.** Appraisal in **CIT HO-3** is available in accordance with its provisions.

### Condition **J. Loss Payment**

Regarding the repair, replacement or rebuilding of property covered under Coverage **A** or Coverage **B** performed under this "Endorsement", Condition **J.** Loss Payment, paragraphs **1.**, **2.**, and **3.** are deleted in **CIT HO-3** and replaced by paragraphs **1.**, **2.** and **3.** in **J.** below:

### **J. Loss Payment**

1. We will pay the "Contractor" directly for the covered repairs described in the scope of repairs for covered damages.

2. We will include you on the check in **1.** above.

3. In no event will we make duplicate payments for the same element of loss.

## SECTION I AND II – CONDITIONS

### Condition **I. Notification Regarding Access**

The following is added to Condition **I.** Notification Regarding Access in **CIT HO-3** as regards this "Endorsement".

Our offer and your consent to participate in this MANAGED REPAIR CONTRACTOR NETWORK PROGRAM requires our agreement to a mutual schedule with you and your permission for Citizens, its designated representative(s) and the "Contractor" to enter the "Residence Premises" at the address designated in your Declarations as the Location of Residence Premises, for the purpose of inspecting and documenting your loss, preparing a scope(s) of repairs for covered damages and providing the repairs, replacement or rebuilding of property covered under Coverage **A** or **B** provided under this "Endorsement".

If there is no permission or agreement, this "Endorsement" does not apply and all other provisions of your policy apply.

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 21 of 69

**HOMEOWNERS**
**CIT 04 96 02 16**

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

# <u>NO</u> SECTION II – LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
# <u>LIMITED</u> SECTION I – PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

**A.** "Business", as defined in the policy, means:

  **1.** A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or

  **2.** Any other activity engaged in for money or other compensation, except the following:

    **a.** One or more activities:

      **(1)** Not described in **b.** through **d.** below; and

      **(2)** For which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

    **b.** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

    **c.** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    **d.** The rendering of home day care services to a relative of an "insured".

**B.** If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".

**C.** If home day care service is not a given "insured's" trade, profession or occupation but is an activity:

  **1.** That an "insured" engages in for money or other compensation; and

  **2.** From which an "insured" receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

the home day care service and other activity will be considered a "business".

**D.** With respect to **C.** above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

  **1.** Described in **A.2.** above, and

  **2.** Engaged in for money by a single "insured";

may be considered a "business" if the $2,000 threshold is exceeded.

**E.** With respect to **A.** through **D.** above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

  **1.** Does not provide:

    **a.** Section **II** coverages. This is because a "business" of an "insured" is excluded under **F.2.** of Section **II** – Exclusions;

    **b.** Coverage, under Section **I**, for other structures from which any "business" is conducted; and

  **2.** Limits Section **I** coverage, under Coverage **C – 3.** Special Limits of Liability, for "business" property:

    **a.** On the "residence premises" for the home day care "business" to $2,500. This is because Category **h.** (**e.** in Form **CIT HO-8**) imposes that limit on "business" property on the "residence premises";

    **b.** Away from the "residence premises" for the home day care "business" to $250 ($1,000 in Form **CIT HO-8**). This is because Category **i.** (**f.** in Form **CIT HO-8**) imposes that limit on "business" property away from the "residence premises". Category **i.** does not apply to property described in Categories **j.** and **k.** (**f.** and **g.** respectively in Form **CIT HO-8**).

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WINDSTORM EXTERIOR PAINT OR WATERPROOFING EXCLUSION – SEACOAST – FLORIDA

**A. Exclusion**

Coverage for any building or structure under this policy excludes loss caused by:

1. Windstorm or hail; or

2. Windstorm during a hurricane;

to paint or waterproofing material applied to the exterior of the building or structure.

**B. Hurricane Described**

1. A hurricane means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service.

2. A hurricane occurrence:

   a. Begins at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;

   b. Continues in effect for as long as hurricane conditions exist anywhere in the State of Florida; and

   c. Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

All other provisions of this policy apply.

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 22 of 69

POLICY NUMBER:

**HOMEOWNERS
CIT 24 07 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALENDAR YEAR HURRICANE DEDUCTIBLE – FLORIDA

**A. Loss By Windstorm During A Hurricane**

With respect to Paragraphs **C.** and **D.**, coverage for loss caused by the peril of windstorm during a hurricane which occurs anywhere in the state of Florida, includes loss to:

1. The inside of a building; or

2. The property we cover contained in a building caused by:

   a. Rain;

   b. Snow;

   c. Sleet;

   d. Hail;

   e. Sand; or

   f. Dust;

If the direct force of the windstorm first damages the building, causing an opening through which the rain, snow, sleet, hail, sand or dust enters and causes damage.

**B. Hurricane Described**

1. A hurricane means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service.

2. A hurricane occurrence:

   a. Begins at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;

   b. Continues in effect for as long as hurricane conditions exist anywhere in the State of Florida; and

   c. Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

**C. Calendar Year Hurricane Deductible Described**

A hurricane deductible issued by us or an "assumption insurer":

1. Can be exhausted only once during each calendar year; and

2. Applies to loss to Covered Property caused by one or more hurricanes during each calendar year.

The dollar amount of the calendar year hurricane deductible is shown in your Declarations.

A minimum deductible of $500 applies.

**D. Application of Calendar Year Hurricane Deductible**

1. In the event of the first windstorm loss caused by a single hurricane occurrence during a calendar year, we will pay:

   Only that part of the total of all loss payable under Section I – Property Coverages that exceeds the calendar year hurricane deductible stated in your Declarations.

2. With respect to a windstorm loss caused by the second, and each subsequent, hurricane occurrence during the same calendar year;

   a. We will pay only that part of the total of all loss payable under Section I - Property Coverages that exceeds the greater of:

      (1) The remaining dollar amount of the calendar year hurricane deductible that is in effect at the time of the loss; or

      (2) The deductible that applies to fire that is in effect at the time of the loss.

   b. The remaining dollar amount of the calendar year hurricane deductible is determined by:

      (1) Subtracting the actual deductible(s) applied to all previous windstorm losses caused by hurricanes during the calendar year;

      (2) From the calendar year hurricane deductible that is in effect at the time of the loss.

3. With respect to any one loss caused by a hurricane occurrence, if:

   a. Covered property is insured under more than one policy:

      (1) Issued by us; or

      (2) Issued by an "assumption insurer" during your Citizens policy calendar year period; and

   b. At the time of loss, different hurricane deductibles apply to the same property under such policies;

CIT 24 07 08            Includes copyrighted material of Insurance Services Office, Inc.,            **Page 1 of 2**
with their permission

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 23 of 69

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 24 of 69

Then the hurricane deductible applicable under all such policies used to determine the total of all loss payable under Section I - Property Coverages shall be:

The highest amount stated in any one of the policies that is in effect at the time of the loss.

4. When:

a. A renewal policy is issued by us or an "assumption" insurer; or

b. We or an "assumption insurer" issue a policy that replaces one issued by us; and

c. The renewal or replacement policy takes effect on a date other than January 1st of a calendar year, the following provisions apply:

(1) If the renewal or replacement policy:

(a) Provides a lower hurricane deductible than the prior policy; and

(b) You incurred loss from a hurricane under a prior policy in that same calendar year;

The lower hurricane deductible will not take effect until January 1st of the following calendar year.

(2) If the renewal or replacement policy:

(a) Provides a lower hurricane deductible than the prior policy; and

(b) You have not incurred a hurricane loss in that same calendar year;

The lower hurricane deductible will take effect on the effective date of the renewal or replacement policy.

(3) If the renewal or replacement policy provides a higher hurricane deductible than the prior policy, the higher hurricane deductible:

(a) Will take effect on the effective date of the renewal or replacement policy; and

(b) Shall be used to calculate the remaining dollar amount of the hurricane deductible.

5. An "assumption insurer" means an insurer who assumes contractual liability of your Citizens policy under an assumption agreement or take out plan pursuant to Florida Statutes 627.351(6) and 627.3511.

All other provisions of this policy apply.

Unique Code : CAA-FBH-BCAJJ-CCHCABJE-BCJCDBI-C Page 25 of 69

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY**

# WINDSTORM PROTECTIVE DEVICES

**A.** We acknowledge the installation of storm shutters and other windstorm protective devices, reported by you to us, for which you received a premium credit, that are part of:

    **1.** The dwelling described as the "residence premises" shown in your Declarations; or

    **2.** The condominium unit or cooperative unit described as the "residence premises." shown in your Declarations.

**B.** If the storm shutters attached to **A.1.** or **A.2.** above are not closed and secured during a "hurricane," we will reduce by 15%:

    **1.** The Coverage **A** amount we pay for "windstorm" loss;

    **2.** The Coverage **C** amount we pay for "windstorm" loss; and

    **3.** The Coverage **D** amount we pay for "windstorm" loss;

that occurs during that "hurricane."

"Windstorm," for purposes of **B.** above means wind, wind gusts, hail, rain, tornadoes, or cyclones caused by or resulting from a hurricane.

**C.** "Hurricane" for purposes of paragraph **B.** means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service.

The duration of the hurricane includes the time period, in Florida:

    **1.** Beginning at the time a hurricane watch or hurricane warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;

    **2.** Continuing for the time period during which the hurricane conditions exist anywhere in Florida; and

    **3.** Ending 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

**D.** The provisions of **B.** above do not apply:

    **1.** In the event of a total loss, of the building under **A.1.** above or the unit under **A.2.** above, caused by the peril of windstorm or hail; or

    **2.** If windstorm or hail loss during a "hurricane" occurs when the "residence premises" is located within a part of the State of Florida that is not under a "hurricane" watch or warning.

All other provisions of the policy apply.

Unique Code : CAA-FBH-BCAJJ-CCHCABJE-BCJCDBI-C Page 26 of 69

POLICY NUMBER:                                                                                          **HOMEOWNERS**
**CIT HO 01 09 06 22**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SPECIAL PROVISIONS – FLORIDA

**SECTIONS I And II -- CONDITIONS**

Paragraph **D. Nonrenewal** provided in Forms **CIT HO-3**, **CIT HO-4**, **CIT HO-6** and **CIT HO-8** is deleted and replaced with the following:

**D. Nonrenewal**

1. We may elect not to renew this Policy. We may do so by delivering to the first named insured, mailing to the first named insured at the mailing address shown in the Declarations, or "electronically transmitting" to the first named insured, written notice, together with the specific reasons for nonrenewal.

   If we nonrenew a policy pursuant to **1.a.** or **1.c.(1)** below, we will also notify any additional named insured shown in the Declarations at their mailing address shown in the Declarations.

   Proof of mailing or "electronic transmittal" is sufficient proof of notice.

   a. If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the "residence premises" has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency, then, during the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the dwelling or other structure located on the "residence premises", we may elect not to renew this Policy only if:

      (1) You have not paid the renewal premium;

      (2) There has been a material misstatement or fraud related to the claim;

      (3) We determine that you have unreasonably caused a delay in the repair of the dwelling or other structure; or

      (4) We have paid policy limits.

      We may do so by letting you know at least 45 days before the expiration date of the Policy.

   b. We shall be entitled to collect any additional premium required to keep the Policy in effect during this period.

      However, this provision **(D.1.b.)** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the extension.

   c. If the conditions described in Paragraph **D.1.a.** do not apply, we may elect not to renew this Policy by providing the following notice before the expiration date of this Policy:

      (1) When nonrenewal is for:

         (a) A Policy that has been assumed by an authorized insurer offering replacement or renewal coverage to you; or

         (b) A risk that has received an offer of comparable coverage from an authorized insurer through Citizens' policyholder eligibility clearinghouse program that renders such risk ineligible for Citizens;

         we will give the first named insured at least 45 days written notice before the expiration of this Policy.

      (2) For all other nonrenewals, we will give the first named insured at least 120 days written notice before the expiration of this Policy.

   d. Depopulation Provision.

      (1) Under this provision, the Citizens Property Insurance Corporation ("Citizens") may nonrenew this Policy under the following conditions:

         (a) If we or the Florida Market Assistance Program obtain an offer from an authorized insurer to cover the property described in the Declarations, at approved rates, except as otherwise provided in Florida law.

         (b) This Policy may be replaced by a policy that may not provide coverage identical to the coverage provided by Citizens.

**CIT HO 01 09 06 22**          Includes copyrighted material of Insurance Services Office, Inc.          **Page 1 of 2**
with its permission

       (2) Acceptance of Citizens coverage by you creates a conclusive presumption that you are aware of this potential.

2. We will not nonrenew this Policy:

   a. On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

   b. On the basis of a single claim which is the result of water damage, unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property;

   c. On the basis of filing of claim(s) for "sinkhole loss"; unless:

       (1) The total of such payments equals or exceeds the policy limits of coverage for the Policy in effect on the date of loss, for property damage to the "principal building"; or

       (2) You have failed to repair the structure in accordance with the engineering recommendations upon which any payment or policy proceeds were based;

   d. On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or members of the "insured's" household; or

   e. On the basis of credit information available in public records.

3. If the date of nonrenewal becomes effective during a "hurricane occurrence":

   a. The expiration date of this Policy will not become effective until the end of the "hurricane occurrence"; and

   b. We shall be entitled to collect additional premium for the period the Policy remains in effect.

However, this provision **(D.3.)** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the "hurricane occurrence"

All other provisions of this Policy apply.

      Includes copyrighted material of Insurance Services Office, Inc., with its permission    **CIT HO 01 09 06 22**

Unique Code : CAA-FBH-BCAJJ-CCHCABJE-BCJCDBI-C Page 27 of 69

# CITIZENS HOMEOWNERS 3 - SPECIAL FORM

## TABLE OF CONTENTS

**GENERAL**

| | |
|---|---|
| Agreement | 1 |
| Definitions | 1 |

**SECTION I - PROPERTY COVERAGES**

| | | |
|---|---|---|
| A. | Coverage A - Dwelling | 4 |
| B. | Coverage B - Other Structures | 4 |
| C. | Special Limit Of Liability Coverages A, B & D | 5 |
| D. | Coverage C - Personal Property | 5 |
| | 1. Covered Property | 5 |
| | 2. Limit For Property At Other Locations | 5 |
| | 3. Special Limits Of Liability | 5 |
| | 4. Property Not Covered | 6 |
| E. | Coverage D - Loss Of Use | 7 |
| F. | Reasonable Emergency Measures | 8 |
| G. | Additional Coverages | |
| | 1. Debris Removal | 9 |
| | 2. Trees, Shrubs and Other Plants | 9 |
| | 3. Fire Department Service Charge | 9 |
| | 4. Property Removed | 9 |
| | 5. Credit Card, Fund Transfer Card, Forgery and Counterfeit Money | 9 |
| | 6. Loss Assessment | 10 |
| | 7. Collapse | 10 |
| | 8. Glass Or Safety Glazing Material | 11 |
| | 9. Landlord's Furnishings | 12 |
| | 10. "Fungi", Wet Or Dry Rot, Yeast Or Bacteria | 12 |
| | 11. Ordinance or Law | 12 |

**SECTION I - PERILS INSURED AGAINST**

| | | |
|---|---|---|
| A. | Coverages A & B | 13 |
| B. | Coverage C | 17 |

**SECTION I - EXCLUSIONS**

| | | |
|---|---|---|
| A.1. | Ordinance Or Law | 18 |
| A.2. | Earth Movement And Settlement | 19 |
| A.3. | Water Damage | 19 |
| A.4. | Power Failure | 19 |
| A.5. | Neglect | 19 |
| A.6. | War | 20 |
| A.7. | Nuclear Hazard | 20 |
| A.8. | Intentional Loss | 20 |
| A.9. | Loss Caused By "Sinkhole" | 20 |
| A.10. | "Fungi", Wet Or Dry Rot, Yeast Or Bacteria | 20 |
| A.11. | Existing Damage | 20 |
| A.12. | Constant Or Repeated Seepage Or Leakage Of Water Or Steam | 20 |
| A.13. | Accidental Discharge Or Overflow Of Water Or Steam | 20 |
| B.1. | Weather Conditions | 20 |
| B.2. | Acts or Decisions | 21 |
| B.3. | Faulty, Inadequate Or Defective | 21 |

**SECTION I - CONDITIONS**

| | | |
|---|---|---|
| A. | Insurable Interest And Limit of Liability | 21 |
| B. | Duties After Loss | 21 |
| | 1. Duties Of An "Insured" | 21 |
| | 2. Duties Of An "Assignee" | 23 |
| | 3. Application Of Duties | 23 |
| C. | Loss Settlement | 23 |
| D. | Loss To A Pair Or Set | 25 |
| E. | Glass Replacement | 25 |
| F. | Alternative Dispute Resolution | 25 |
| | 1. Mediation | 25 |
| | 2. Appraisal | 25 |
| G. | Other Insurance And Service Agreement | 26 |
| H. | Suit Against Us | 26 |
| I. | Our Option | 27 |
| J. | Loss Payment | 27 |
| K. | Abandonment Of Property | 28 |
| L. | Mortgage Clause | 28 |
| M. | No Benefit To Bailee | 28 |
| N. | Nuclear Hazard Clause | 28 |
| O. | Recovered Property | 28 |
| P. | Volcanic Eruption Period | 28 |
| Q. | Adjustment To Property Coverage Limits | 29 |
| R. | Deductible | 29 |
| S. | Policy Period | 29 |
| T. | Incorrect Statements Or Representations, Concealment Or Fraudulent Conduct | 29 |
| U. | Claim, Supplemental Claim, Or Reopened Claim | 29 |

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 28 of 69

Unique Code : CAA-FBH-BCAJ-CCCHCABJE-BCJCDBI-C Page 29 of 69

## SECTION II - LIABILITY COVERAGES

A.  Coverage E – Personal Liability        29
B.  Coverage F – Medical Payments
    To Others                              30

## SECTION II - EXCLUSIONS

A.  Motor Vehicle Liability               30
B.  Watercraft Liability                  30
C.  Personal Watercraft Liability         31
D.  Aircraft Liability                    31
E.  Hovercraft Liability                  31
F.  Coverage E & F                        31
G.  Coverage E                            32
H.  Coverage F                            33

## SECTION II - ADDITIONAL COVERAGES

A.  Claim Expenses                        33
B.  First Aid Expenses                    33
C.  Damage To Property Of Others          33
D.  Loss Assessment                       33

## SECTION II - CONDITIONS

A.  Limit Of Liability                    34
B.  Severability Of Insurance             34
C.  Duties After Occurrence               34
D.  Duties Of An Injured Person – Coverage
    F – Medical Payments To Others        35
E.  Payment Of Claim – Coverage
    F – Medical Payments To Others        35
F.  Suit Against Us                       35
G.  Bankruptcy Of An Insured              35
H.  Other Insurance                       35
I.  Joint Obligations                     35
J.  Policy Period                         35
K.  Concealment Or Fraud                  35

## SECTIONS I AND II - CONDITIONS

A.  Liberalization Clause                 35
B.  Waiver Or Change Of Policy Provisions 36
C.  Cancellation                          36
D.  Nonrenewal                            37
E.  Assignment                            38
F.  Salvage                               39
G.  Subrogation                           39
H.  Inspections And Surveys               39
I.  Notification Regarding Access         39
J.  Death                                 39
K.  Renewal Notification                  39
L.  Document Transmittal                  39

# CITIZENS HOMEOWNERS 3 - SPECIAL FORM

## AGREEMENT

This Policy is issued on behalf of the Citizens Property Insurance Corporation and by acceptance of this Policy you agree:

1. That the statements in the Application(s) are your representations;

2. That this Policy is issued in reliance upon the truth of those representations;

3. That this Policy embodies all agreements existing between you and the Citizens Property Insurance Corporation relating to this Policy.

We will provide the insurance described in this Policy in return for the premium and compliance with all applicable provisions of this Policy.

This Policy does not include, does not insure, and we will not pay for, any "diminution in value", except under liability coverage in SECTION II – LIABILITY COVERAGES.

## DEFINITIONS

A. In this Policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

B. In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability", "Personal Watercraft Liability", and "Watercraft Liability", subject to the provisions in **1.b.** below, mean the following:

   a. Liability for "bodily injury" or "property damage" arising out of the:

      (1) Ownership of such vehicle or craft by an "insured";

      (2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

      (3) Entrustment of such vehicle or craft by an "insured" to any person;

      (4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

      (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   b. For the purpose of this definition:

      (1) Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

      (2) Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

      (3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor and is not a "personal watercraft";

      (4) Motor vehicle means a "motor vehicle" as defined in **14.** below; and

      (5) Personal watercraft means a "personal watercraft" as defined in **16.** below.

2. "Assignee" means a person who is assigned post-loss benefits through an "assignment agreement".

3. "Assignment agreement" means any instrument by which post-loss benefits under a residential property insurance policy are assigned or transferred, or acquired in any manner, in whole or in part, to or from a person providing services to protect, repair, restore, or replace property or to mitigate against further damage to the property.

4. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

5. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation, except the following:

      (1) One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

      (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

      (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

      (4) The rendering of home day care services to a relative of an "insured".

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 30 of 69

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 31 of 69

6. "Catastrophic ground cover collapse" means geological activity that results in all of the following:

   a. The abrupt collapse of ground cover;

   b. A depression in the ground cover clearly visible to the naked eye;

   c. "Structural damage" to the "principal building", including the foundation; and

   d. The "principal building" being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that "principal building".

7. "Diminution in value" means any reduction in the value of any covered property as compared to the value of that property immediately before the loss.

8. "Electronic transmittal" means:

   a. The electronic transmittal of any document or notice to the designated Primary Email Address shown in your Declarations; or

   b. The electronic posting of any document or notice, with notification to you of the posted document or notice, by electronic transmittal to the designated Primary Email Address shown in your Declarations.

   (Hereafter referred to as "electronically transmitted", "electronic transmittal", "electronically transmit" or "electronically transmitting")

9. "Employee" means a person employed by an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

10. "Fungi" means any type or form of fungus, including:

    a. Mold or mildew; and

    b. Any mycotoxins, toxins, spores, scents or byproducts produced or released by fungi.

    Under SECTION II, this does not include any fungi, yeast or bacteria that are, are on or are contained in a good or product intended for consumption.

11. "Insured" means:

    a. You and residents of your household who are:

       (1) Your relatives; or

    (2) Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

    b. A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

       (1) 24 and your relative; or

       (2) 21 and in your care or the care of a resident of your household who is your relative; or

    c. Under SECTION II, "insured" also means:

       (1) With respect to watercraft to which this Policy applies, any person or organization legally responsible for watercraft which are owned by you or any person described in **11.a.** or **11.b.** above.

          "Insured" does not mean a person or organization using or having custody of the watercraft in the course of any "business" or without consent of the owner; or

       (2) With respect to a "motor vehicle" to which this Policy applies:

          (a) Persons while engaged in your employ or that of any person described in **11.a.** or **11.b.**; or

          (b) Other persons using the vehicle on an "insured location" with your consent.

    Under both SECTIONS **I** and **II**, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

12. "Insured location" means:

    a. The "residence premises";

    b. The part of other premises, other structures and grounds used by you as a residence; and:

       (1) Which is shown in the Declarations as "Location of Residence Premises"; or

       (2) Which is acquired by you during the policy period for your use as a residence;

    c. Any premises used by you in connection with a premises described in **12.a.** and **12.b.** above;

d. Any part of a premises:

(1) Not owned by an "insured"; and

(2) Where an "insured" is temporarily residing;

e. Vacant land, other than farm land, owned by or rented to an "insured";

f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

g. Individual or family cemetery plots or burial vaults of an "insured"; or

h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

13. "Motor vehicle" means:

a. A self-propelled land or amphibious vehicle; or

b. Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **13.a.** above.

14. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. "Bodily injury"; or

b. "Property damage".

15. "Personal watercraft" means:

a. A watercraft that the rider sits, kneels or stands on rather than inside of, designed to carry one to four people, propelled by a water jet pump; or

b. A watercraft designed to be partially or fully submersible.

16. "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

17. "Primary structural system" means an assemblage of "primary structural members".

18. "Principal building" means that part of your dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling as described under SECTION I – Coverage **A**.

However, "principal building" does not include:

a. Appurtenant structures, driveways, sidewalks, walkways, decks, patios, pools, spas, or fences;

b. Buildings or other structures covered under Coverage **B**;

c. Buildings, structures and other property excluded or not covered in your Policy;

d. That part of other premises, other buildings, other structures and grounds not located at the "residence premises"; or

e. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair any property other than the "principal building" on the "residence premises".

19. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

20. "Residence employee" means:

a. An employee of an "insured" or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

b. One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

21. "Residence premises" means:

a. The one family dwelling; or

b. That part of any other building;

where you reside and which is shown as the "Location of Residence Premises" in the Declarations.

"Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "Location of Residence Premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

22. "Structural damage" means a "principal building", regardless of the date of its construction, has experienced the following:

a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 32 of 69

**b.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

**c.** Damage that results in listing, leaning or buckling of the exterior load bearing walls or other vertical "primary structural members" to an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**d.** Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**e.** Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

**23.** "Unoccupied" means the dwelling is not being inhabited as a residence.

**24.** "Vacant" means the dwelling lacks the necessary amenities, adequate furnishings, or utilities and services to permit occupancy as a residence.

## SECTION I – PROPERTY COVERAGES

### A. Coverage A – Dwelling

**1.** We cover:

**a.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

**b.** Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

This coverage is limited to the "principal building" for the peril of "catastrophic ground cover collapse".

**2.** We do not cover:

**a.** Land, including land on which the dwelling is located;

**b.** Carports, porches constructed to be open to the weather, patios constructed to be open to the weather, or pool enclosures, any of which have a roof or covering of:

**(1)** Aluminum;

**(2)** One or more fiberglass panels;

**(3)** Plastic;

**(4)** Vinyl;

**(5)** Fabric; or

**(6)** Screening;

**c.** Awnings;

**d.** Any structure whether attached or separate from the covered dwelling, that has a roof, exterior wall, or covering, of thatch, grass, palm, lattice, slats, or similar material;

**e.** Any attachment on the covered dwelling comprised of thatch, grass, palm, lattice, slats, or similar material; or

**f.** Slat houses, chickees, tiki huts, gazebos, cabanas, canopies, pergolas, or similar structures, all constructed to be open to the weather.

### B. Coverage B – Other Structures

**1.** We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

**2.** We do not cover:

**a.** Land, including land on which the other structures are located;

**b.** Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

**c.** Other structures from which any "business" is conducted;

**d.** Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling, provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure;

Unique Code : CAA-FBH-BCAJ-CCCHCABJE-BCJCDBI-C Page 33 of 69

e. Carports, porches constructed to be open to the weather, patios constructed to be open to the weather, or pool enclosures, any of which have a roof or covering of:

(1) Aluminum;

(2) One or more fiberglass panels;

(3) Plastic;

(4) Vinyl;

(5) Fabric; or

(6) Screening;

f. Awnings;

g. Any structure that has a roof, exterior wall, or covering, of thatch, grass, palm, lattice, slats, or similar material; or

h. Slat houses, chickees, tiki huts, gazebos, cabanas, canopies, pergolas, or similar structures, all constructed to be open to the weather.

3. This coverage does not apply to loss or damage resulting from the peril of "catastrophic ground cover collapse".

4. The limit of liability for this coverage is shown in your Declarations. Use of this coverage does not reduce the Coverage **A** limit of liability.

C. **Coverage A – Dwelling, Coverage B – Other Structures and Coverage D – Loss of Use**

1. **Special Limit Of Liability**

a. The total limit of liability for Coverages **A**, **B** and **D** combined is $10,000 per policy period for cosmetic or aesthetic damages to floors.

b. Cosmetic or aesthetic damage includes damage that covers less than 5% of the total floor surface area of the building and does not prevent typical use of the floor.

c. This limit includes the cost of tearing out and replacing any part of the building necessary to repair the damaged flooring.

d. Unless otherwise excluded, $10,000 is the most we will pay for the total of all loss or costs payable, including Loss of Use under this Special Limit of Liability regardless of the:

(1) Number of locations insured;

(2) Number of occurrences or claims made; or

(3) Number of "insureds".

e. This total limit of liability for coverage does not:

(1) Increase the limit of liability applying to Coverages **A**, **B** and **D**;

(2) Create additional coverage; or

(3) Increase limits of coverage.

f. This limit does not apply and does not create coverage for damage to floors caused by wear and tear, marring, chipping, scratches, dents, deterioration, dropped objects or loss, excluded elsewhere in this Policy.

g. This limit does not apply to cosmetic or aesthetic damage to floors caused by a Peril Insured Against as named and described under Coverage **C** – Personal Property.

D. **Coverage C – Personal Property**

1. **Covered Property**

We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or

b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. **Limit For Property At Other Locations**

a. Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C**, or $1,000, whichever is greater.

b. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

3. **Special Limits of Liability**

These limits do not increase the Coverage **C** limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

b. $1,000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets, stamps, trading cards, and comic books.

Unique Code : CAA-FBH-BCAJJ-CCHCABJE-BCJCDBI-C Page 34 of 69

Unique Code : CAA-FBH-BCAJJ-CCHCABJE-BCJCDBI-C Page 35 of 69

This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

**c.** $1,000 on watercraft other than "personal watercraft", including their trailers, furnishings, equipment and outboard engines or motors.

**d.** $1,000 on trailers not used with watercraft.

**e.** $1,000 on jewelry, watches, furs, precious and semi-precious stones.

**f.** $2,000 on firearms.

**g.** $2,500 on silverware, silver-plated ware, goldware, gold-plated ware, platinum, platinumware, platinum-plated ware and pewterware.

This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold, platinum or pewter.

**h.** $2,500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.

**i.** $250 on property, away from the "residence premises", used at any time or in any manner for any "business" purpose.

However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits **j.** and **k.** below.

**j.** $1,000 for loss to electronic apparatus (for the covered perils except theft, which is hereby excluded from coverage), while in or upon a motor vehicle or other motorized land conveyance; if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power.

Electronic apparatus includes:

**(1)** Accessories and antennas; or

**(2)** Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this item **j.**

**k.** $1,000 for loss to electronic apparatus (for all covered perils except theft, which is hereby excluded from coverage), while not in or upon motor vehicle or other motorized land conveyance; if the electronic apparatus:

**(1)** Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

**(2)** Is away from the "residence premises"; and

**(3)** Is used at any time or in any manner for any "business" purposes.

Electronic apparatus includes:

**(1)** Accessories and antennas; or

**(2)** Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this item **k.**

**l.** $500 is the maximum loss payable for covered property stored in freezers or refrigerators on the "residence premises".

Paragraphs **1.**, **2.** and **3.** do not apply to personal property when the limit of liability for Coverage **C** shown in your Declarations is $0.

**4. Property Not Covered**

We do not cover:

**a.** Articles separately described and specifically insured in this or other insurance;

**b.** Animals, birds or fish;

**c.** "Motor vehicles" or all other motorized land conveyances. This includes:

**(1)** Their equipment and accessories; or

**(2)** Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of:

**(a)** Motor vehicles; or

**(b)** All other motorized land conveyances.

Electronic apparatus includes:

**(a)** Accessories and antennas; or

**(b)** Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this item **c.(2)**.

The exclusion of property described in **c.(1)** and **c.(2)** above applies only while the property is in or upon the vehicle or conveyance.

**(3)** We do cover vehicles or conveyances not subject to motor vehicle registration which are:

**(a)** Located on the "residence premises" and used solely to service an "insured's" residence;

**(b)** A motorized golf cart located on the "residence premises" or while being operated to or from, or on the premises of a golf course; or

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 36 of 69

(c) Designed for assisting the handicapped.

The coverage described in **c.(3)** above does not apply to land conveyances including, but not limited to, all terrain vehicles, utility terrain vehicles, mopeds, scooters not designed to assist the handicapped, motorcycles, and motorized bicycles, whether subject to motor vehicle registration or not.

**d.** Aircraft and parts.

Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

**e.** Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

**f.** Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in Additional Coverages **G.9.**;

**g.** Property rented or held for rental to others off the "residence premises";

**h.** "Business" data, including such data stored in:

(1) Books of account, drawings or other paper records; or

(2) Electronic data processing tapes, wires, records, discs or other software media;

However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market;

**i.** Credit cards or fund transfer cards except as provided in Additional Coverages **G.5.**;

**j.** Personal property stored in freezers or refrigerators located off the "residence premises";

**k.** "Personal watercraft"; or

**l.** Water or steam.

However, we cover the removal and replacement of water in a swimming pool located on the "residence premises", when there is covered loss or damage to the swimming pool caused by a Peril Insured Against and a covered repair to the swimming pool requires the removal of all or a portion of the water.

**E. Coverage D – Loss Of Use**

The limit of liability for Coverage **D** is the total limit for all the coverages that follow.

**1. Additional Living Expense**

If a loss covered under SECTION **I** makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning:

**a.** Any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to:

**a.** Repair or replace the damage; or

**b.** If you permanently relocate, the shortest time required for your household to settle elsewhere.

In either event, the payment(s) will be limited to 24 consecutive months from the date of the covered loss.

**2. Fair Rental Value**

If a loss covered under SECTION **I** makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the Fair Rental Value, meaning:

**a.** The fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

In either event, the payment(s) will be limited to 24 consecutive months from the date of the covered loss.

**3. Civil Authority Prohibits Use**

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this Policy, for the period of time the civil authority prevents use of the "residence premises" we cover the Additional Living Expense and Fair Rental Value loss as provided under **1.** and **2.** above for no more than 2 weeks.

The periods of time under **1.**, **2.** and **3.** above are not limited by expiration of this Policy.

We do not cover pre-event evacuation expenses.

We do not cover loss or expense due to cancellation of a lease or agreement.

Unique Code : CAA-FBH-BCAJ-CCHCABJE-BCJCDBI-C Page 37 of 69

**F. Reasonable Emergency Measures**

1. We will pay up to $3,000 for the reasonable costs incurred by you for necessary measures taken solely to protect covered property under Coverage **A**, Coverage **B** and Coverage **C** from further damage, when the damage or loss is caused by accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, subject to the limitations, exclusions and conditions, as described and covered in paragraphs **A.2.b.(6)** and **(9)** under SECTION **I** – PERILS INSURED AGAINST **A.** Coverage **A** – Dwelling And Coverage **B** – Other Structures and as described and covered in **B.** Coverage **C** – Personal Property Peril **12.**

   The $3,000 limit in **F.1.** above is the total limit for all necessary measures taken solely to protect covered property, in the same loss, under any one or any combination of:

   a. Coverage **A**;

   b. Coverage **B**; or

   c. Coverage **C**.

2. For covered loss caused by SECTION **I** – PERILS INSURED AGAINST, other than the perils as described and covered in paragraphs **A.2.b.(6)** and **(9)** under SECTION **I** – PERILS INSURED AGAINST **A.** Coverage **A** – Dwelling And Coverage **B** – Other Structures and as described and covered in **B.** Coverage **C** – Personal Property Peril **12.**, the $3,000 limit in **F.1.** above does not apply and instead the following applies:

   a. In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable costs incurred by you for necessary measures taken solely to protect covered property from further damage.

   b. If the measures taken involve repair to other damaged property, we will pay for those necessary measures only if that property is covered under this Policy and the damage to that property is caused by an applicable Peril Insured Against.

3. The coverage under **F.1.** and **F.2.** above does not:

   a. Increase the $10,000 limit on coverage under paragraphs **A.3.** and **A.6.** in SECTION **I** – PERILS INSURED AGAINST **A.** Coverage **A** – Dwelling And Coverage **B** – Other Structures.

Any payment for Reasonable Emergency Measures **F.1.** will be deducted from the $10,000 limit on coverage under paragraphs **A.3.** and **A.6.** in SECTION **I** – PERILS INSURED AGAINST **A.** Coverage **A** – Dwelling And Coverage **B** – Other Structures;

   b. Increase any limit of liability that applies to the damaged covered property;

   c. Relieve you or an "assignee" of the Policy benefits, of the duties in case of a loss to covered property, as set forth in SECTION **I** – CONDITIONS **B.** Duties After Loss;

   d. Pay for property not covered in this Policy; or

   e. Pay for loss excluded or not covered in this Policy.

4. The exhaustion of the $3,000 Reasonable Emergency Measures limit in **F.1.** above does not prevent you from participating in the services provided under form **CIT 04 85**, if additional emergency water removal services are necessary.

   However, we will not pay under Reasonable Emergency Measures **F.1.** for any services, or part or portion of any services, provided and performed under form **CIT 04 85**.

   Subject to **F.3.** above, if you are eligible for and request to participate in the services provided under form **CIT 04 85** and we do not offer the services to you, the $3,000 limit in paragraph **F.1.** does not apply.

5. We will not pay under Reasonable Emergency Measures **F.** for any repairs, replacement or rebuilding, or any part or portion of any repairs, replacement, or rebuilding, made or provided under form **CIT 04 86**.

   However, the $3,000 limit in **F.1.** above applies whether or not:

   a. You receive services under form **CIT 04 86**; or

   b. The $10,000 limit on coverage applies as described in paragraphs **A.3.** and **A.6.** under SECTION **I** – PERILS INSURED AGAINST **A.** Coverage **A** – Dwelling And Coverage **B** – Other Structures.

**G. Additional Coverages**

**1. Debris Removal**

a. We will pay your reasonable expense for the removal of:

(1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

(2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

Debris Removal expense under **G.1.** above does not increase the $10,000 limit on coverage under paragraphs **A.3.** and **A.6.** in SECTION I – PERILS INSURED AGAINST **A.** Coverage **A** – Dwelling And Coverage **B** – Other Structures.

Any payment for Debris Removal expense **G.1.** will be deducted from the $10,000 limit on coverage under paragraphs **A.3.** and **A.6.** in SECTION I – PERILS INSURED AGAINST **A.** Coverage **A** – Dwelling And Coverage **B** – Other Structures.

b. We will also pay the reasonable expense you incur, up to $500, for the removal from the "residence premises" of:

(1) Your tree(s) felled by the peril of Windstorm or Hail;

(2) Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

(3) A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C**;

provided the tree(s) damages a covered structure.

The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

**2. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

a. Fire or Lightning;

b. Explosion;

c. Riot or Civil Commotion;

d. Aircraft;

e. Vehicles not owned or operated by a resident of the "residence premises";

f. Vandalism or Malicious mischief; or

g. Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant.

We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**3. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against.

We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance.

No deductible applies to this coverage.

**4. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

**5. Credit Card, Fund Transfer Card, Forgery And Counterfeit Money**

a. We will pay up to $500 for:

(1) The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 38 of 69

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 39 of 69

(2) Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

(3) Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

(4) Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

b. We do not cover use of a credit card or fund transfer card:

(1) By a resident of your household;

(2) By a person who has been entrusted with either type of card; or

(3) If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured".

This coverage is additional insurance. No deductible applies to this coverage.

c. Defense:

(1) We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

(2) If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

(3) We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

6. **Loss Assessment**

a. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of a direct loss to the property, owned by all members collectively, of the type that would be covered by this Policy if owned by you, caused by a Peril Insured Against under Coverage **A**, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

b. This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises".

c. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

d. The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

This coverage is additional insurance.

No deductible applies to this coverage.

Condition **S.** Policy Period, under SECTION I - CONDITIONS does not apply to this coverage.

7. **Collapse**

a. The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse.

b. For the purposes of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

c. This Additional Coverage – Collapse, does not apply to:

(1) A building or any part of a building that is in danger of falling down or caving in;

(2) A building or any part of a building that is standing even if it has separated from another part of the building;

Unique Code : CAA-FBH-BCAJ-CCHCABJE-BCJCDBI-C Page 40 of 69

(3) A building or any part of a building that is standing, even if it shows evidence of spalling, crumbling, settling, cracking, shifting, bulging, racking, sagging, bowing, bending, leaning, shrinkage or expansion; or

(4) The plumbing system, or any part of the plumbing system, whether above or below the ground, when the plumbing system or any part of the plumbing system is:

(a) Collapsed;

(b) In danger of collapsing or caving in; or

(c) Separated from another part of the system;

due to:

(a) Age, obsolescence, wear, tear;

(b) Fading, oxidization, weathering;

(c) Deterioration, decay, marring, delamination, crumbling, settling, cracking;

(d) Shifting, bulging, racking, sagging, bowing, bending, leaning;

(e) Shrinkage, expansion, contraction, bellying, corrosion; or

(f) Any other age or maintenance related issue.

However, this Additional Coverage – Collapse will apply to that part of a building's plumbing system damaged by an abrupt collapse of a covered building, or abrupt collapse of any part of a covered building.

d. We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:

(1) The Perils Insured Against in Coverage **C** - Personal Property;

(2) Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse.

However, **d.(2)** above does not provide coverage for a plumbing system or any part of a plumbing system resulting from decay as described in Additional Coverage **7.c.(4)** above;

(3) Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective materials or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

e. Loss to a:

(1) Fence, awning, patio, pavement;

(2) Swimming pool, underground pipe, flue, drain, cesspool;

(3) Foundation, retaining wall, bulkhead, pier, wharf, dock;

(4) Cistern, plumbing system, or any part of a plumbing system, or similar structure;

whether above or below the ground, is not included under items **d.(2)** through **(6)** above; unless the loss is a direct result of the collapse of a building or any part of the building.

f. This coverage does not increase the limit of liability applying to the damaged covered property.

For purposes of this Additional Coverage **G.7.**, a plumbing system includes a septic system.

8. **Glass Or Safety Glazing Material**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

(2) The breakage caused directly by Earth Movement And Settlement, of glass or safety glazing material which is a part of a covered building, storm door or storm window; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken; except as provided in **a.(3)** above; or

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 41 of 69

**(2)** On the "residence premises" if the dwelling has been "vacant" for more than 30 consecutive days immediately before the loss; except when the breakage results directly from Earth Movement And Settlement as provided for in **a.(2)** above.

A dwelling being constructed is not considered "vacant".

**c.** Loss to glass covered under this Additional Coverage **G.8.** will be settled on the basis of replacement with safety glazing materials when required.

**d.** This coverage does not increase the limit of liability that applies to the damaged property.

**9. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C**, other than theft, or other than sinkhole loss if form **CIT 23 94** applies to your Policy.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

Landlord's Furnishings under **G.9.** above does not increase the $10,000 limit on coverage under paragraphs **A.3.** and **A.6.** in SECTION I – PERILS INSURED AGAINST A. Coverage **A** – Dwelling And Coverage **B** – Other Structures.

Any payment for Landlord's Furnishings **G.9.** will be deducted from the $10,000 limit on coverage under paragraphs **A.3.** and **A.6.** in SECTION I – PERILS INSURED AGAINST A. Coverage **A** – Dwelling And Coverage B – Other Structures.

**10. "Fungi", Wet Or Dry Rot, Yeast Or Bacteria**

**a.** We will pay up to $10,000 for:

**(1)** The total of all loss payable under SECTION I – Property Coverages caused by "fungi", wet or dry rot, yeast or bacteria;

**(2)** The cost to remove "fungi", wet or dry rot, yeast or bacteria from property covered under SECTION I – Property Coverages;

**(3)** The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, yeast or bacteria; and

**(4)** The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, yeast or bacteria; whether performed prior to, during or after removal, repair, restoration or replacement.

The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, yeast or bacteria.

**b.** The coverage described in **a.** only applies:

**(1)** When such loss or costs are a result of a Peril Insured Against that occurs during the policy period; and

**(2)** Only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

**c.** $10,000 is the most we will pay for the total of all loss or costs payable, including Loss of Use under this Additional Coverage **G.10.** regardless of the:

**(1)** Number of locations insured;

**(2)** Number of occurrences or claims made; or

**(3)** Number of "insureds".

**d.** If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi", wet or dry rot, yeast or bacteria; loss payment will not be limited by the terms of this Additional Coverage **10.**, except to the extent that "fungi", wet or dry rot, yeast or bacteria causes an increase in the loss or any Loss of Use.

Any such increase in the loss or Loss of Use will be subject to the terms of this Additional Coverage **G.10.**

This coverage does not increase the limit of liability applying to the damaged covered property.

**11. Ordinance Or Law**

**a.** You may use up to 25% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

Unique Code : CAA-FBH-BCAJ-CCCHCABJE-BCJCDBI-C Page 42 of 69

(1) The construction, demolition, remodeling, renovation or repair of that part of a building covered under Coverage **A** damaged by a Peril Insured Against; or

(2) The demolition and reconstruction of the undamaged part of a building covered under Coverage **A**, when that building must be totally demolished because of damage by a Peril Insured Against to another part of that covered building; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a building covered under Coverage **A** necessary to complete the remodeling, repair or replacement of that part of the covered building damaged by a Peril Insured Against.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from:

(1) Construction;

(2) Demolition;

(3) Remodeling;

(4) Renovation;

(5) Repair; or

(6) Replacement;

of property as stated in **a.** above.

**c.** We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to:

(a) Test for;

(b) Monitor;

(c) Clean up;

(d) Remove;

(e) Contain;

(f) Treat;

(g) Detoxify;

(h) Neutralize; or

(i) In any way respond to, or assess the effects of:

Pollutants in or on any covered building or other structure.

(3) Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including:

(a) Smoke;

(b) Vapor;

(c) Soot;

(d) Fumes;

(e) Acids;

(f) Alkalis;

(g) Chemicals; and

(h) Waste.

Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

## SECTION I – PERILS INSURED AGAINST

### A. Coverage A – Dwelling And Coverage B – Other Structures

**1.** We insure against risk of direct loss to property described in Coverages **A** and **B** only if that loss is a physical loss to property.

This includes the peril of "catastrophic ground cover collapse" as provided in Part **A.** below.

**2.** We do not insure, however, for loss:

**a.** Involving collapse, including any of the following conditions of property or any part of the property, whether above or below the ground:

(1) An abrupt falling down or caving in;

(2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

(3) Any spalling, crumbling, settling, cracking, shifting, bulging, racking, sagging, bowing, bending, leaning, shrinkage or expansion, or any other age or maintenance related issues, as such condition relates to **(1)** or **(2)** above;

except as provided in **G.7.** Collapse under SECTION I – Property Coverages;

**b.** Caused by:

(1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing.

This exclusion applies only while the dwelling is "vacant", "unoccupied" or being constructed, unless you have used reasonable care to:

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 43 of 69

**(a)** Maintain heat in the building; or

**(b)** Shut off the water supply and drain the system and appliances of water;

**(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

**(a)** Fence, pavement, patio or swimming pool;

**(b)** Foundation, retaining wall, or bulkhead; or

**(c)** Pier, wharf or dock;

**(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(4)** Theft or attempted theft in or to a dwelling if the dwelling has been "vacant" for more than 30 consecutive days immediately before the loss;

**(5)** Vandalism and malicious mischief if the dwelling has been "vacant" for more than 30 consecutive days immediately before the loss.

A dwelling being constructed is not considered "vacant";

**(6)** Accidental discharge or overflow of water or steam, unless loss to property covered under Coverage **A** or **B** results from an accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises", subject to the $10,000 limit as set forth in **3.** below.

Loss to property covered under Coverage **A** or **B** that results from an accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises" includes, subject to the $10,000 limit as set forth in **3.** below, the cost to tear out and repair only that part or portion of a building or other structure covered under Coverage **A** or **B**, on the "residence premises", necessary to access the system or appliance.

**(a)** The cost that we will pay for the tear out and repair of the part or portion of the building or other structure covered under Coverage **A** or **B** as specified above is limited to only that part or portion of the covered building or other structure which is necessary to provide access to the part or portion of the system or appliance that caused the covered loss, whether the system or appliance, or any part or portion of the system or appliance, is repairable or not.

**(b)** In no event will we pay for the repair or the replacement of the system or appliance that caused the covered loss.

We do not cover loss:

**(a)** To the system or appliance from which this water or steam escaped;

**(b)** On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises";

**(c)** Caused by constant or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years, unless such seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure, subject to the $10,000 limit as set forth in **3.** below.

In the event this exclusion applies, we will not pay for any damages sustained starting from the first day and instance the occurrence of constant or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor began;

**(d)** To a plumbing system, whether above or below the ground, caused by:

**(i)** Age, collapse, obsolescence, wear, tear;

Unique Code : CAA-FBH-BCAJJ-CCHCABJE-BCJCDBI-C Page 44 of 69

**(ii)** Fading, oxidization, weathering;

**(iii)** Deterioration, decay, marring, delamination, crumbling, settling, cracking;

**(iv)** Shifting, bulging, racking, sagging, bowing, bending, leaning;

**(v)** Shrinkage, expansion, contraction, bellying, corrosion;

**(vi)** The unavailability or discontinuation of a part or component of the system; or

**(vii)** Any other age or maintenance related issue;

**(e)** To a plumbing system, whether above or below the ground, caused by the impairment, state or condition of the system, which prohibits repair or replacement including access, necessary to connect the adjoining parts of appliances, pipes or system; or

**(f)** Otherwise excluded or limited elsewhere in the Policy.

For purposes of this provision, a plumbing system or household appliance does not include:

**(a)** A sump, sump pump, irrigation system, or related equipment; or

**(b)** A roof drain, gutter, down spout, or similar fixtures or equipment.

**(7)** Dropped objects to the interior of a building, property contained in a building, or flooring located outside of a building, unless the roof or an outside wall of the building is first damaged by a dropped object.

Damage to the dropped object itself is not covered.

**(8)** Rain, snow, sleet, sand or dust to the interior of a building unless a covered peril first damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**(9)** Any of the following:

**(a)** Wear and tear, marring, chipping, scratches, dents, or deterioration;

**(b)** Inherent vice, latent defect, defect or mechanical breakdown;

**(c)** Smog, rust, decay or other corrosion;

**(d)** Smoke from agricultural smudging or industrial operations;

**(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage **C** of this Policy.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including:

**(i)** Smoke,

**(ii)** Vapor,

**(iii)** Soot,

**(iv)** Fumes,

**(v)** Acids,

**(vi)** Alkalis,

**(vii)** Chemicals; and

**(viii)** Waste.

Waste includes materials to be recycled, reconditioned or reclaimed;

**(f)** Settling, shrinking, bulging or expansion, including resultant cracking of pavements, patios, foundations, walls, floors, roofs or ceilings; or

**(g)** Birds, vermin, rodents, marsupials, animals, reptiles, fish, insects, or pests, including but not limited to, termites, snails, raccoons, opossums, armadillos, flies, bed bugs, lice, ticks, locust, cockroaches, and fleas.

If any of these in **2.b.(9)** above cause water damage not otherwise excluded or limited elsewhere in the Policy, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss, subject to the $10,000 limit as set forth in **3.** below, caused by the water, including the cost to tear out and repair only that part or portion of a building or other structure covered under Coverage **A** or **B**, on the "residence premises", necessary to access the system or appliance.

Unique Code : CAA-FBH-BCAJ-CCHCABJE-BCJCDBI-C Page 45 of 69

(a) The cost that we will pay for the tear out and repair of the part or portion of the building or other structure covered under Coverage **A** or **B** as specified above is limited to only that part or portion of the covered building or other structure which is necessary to provide access to the part or portion of the system or appliance that caused the covered loss, whether the system or appliance, or any part or portion of the system or appliance, is repairable or not.

(b) In no event will we pay for the repair or the replacement of the system or appliance that caused the covered loss.

We do not cover loss to the system or appliance from which this water escaped.

For purposes of this provision, a plumbing system or household appliance does not include:

(a) A sump, sump pump, irrigation system, or related equipment; or

(b) A roof drain, gutter, down spout, or similar fixtures or equipment.

c. Excluded under SECTION I – Exclusions.

3. A $10,000 limit on coverage applies and is the most we will pay for:

a. Each covered direct physical loss from all water or steam in paragraphs **2.b.(6)** and **2.b.(9)** above; and

b. All cosmetic and aesthetic damage, which occurs in the same loss as **3.a.** above, including any repair or replacement of items to match quality, color, or size.

Payment for Reasonable Emergency Measures under SECTION I – Property Coverages paragraph **F.1.**, which occurs in the same loss as **3.a.** above, will be deducted from the $10,000 limit on coverage.

4. The $10,000 limit on coverage in **3.** above does not apply if:

a. At our option we offer and you provide written consent to participate in the services and execute the contract with the Program "Contractor", as described under **CIT 04 86**; or

b. Prior either to your incurring any costs for covered repairs or your starting any covered repairs, you request and we do not offer the services described under **CIT 04 86** to you.

c. However **4.** above does not apply if we or the Program "Contractor" described in **CIT 04 86** determine:

(1) Conditions are present that prevent repair, replacement or rebuilding of the property from starting or being completed; or

(2) The property is in a condition that impairs or prevents the Program "Contractor's" ability to repair the covered loss.

In this event, your participation in the Program under **CIT 04 86** is terminated and the $10,000 limit on coverage applies.

d. Additionally, if you do not provide written consent to participate in the Program and execute the contract with the Program "Contractor" as described in **CIT 04 86**, or your participation in the Program has been terminated by you or us as described in **CIT 04 86**, or you make a subsequent request to participate in the Program for the same loss, the $10,000 limit on coverage will apply, except as otherwise provided in **CIT 04 86** and your Policy.

5. In the event the $10,000 limit on coverage in **3.** above does not apply, the Coverage **A** Limit Of Liability or Coverage **B** Limit Of Liability, applicable to the damaged covered property, is the most we will pay.

However, whether the $10,000 limit on coverage is applicable or not:

a. For coverage provided under SECTION I – Property Coverages **F.1.** in this policy, the limit in **F.1.** Reasonable Emergency Measures will apply; and

b. For a coverage provided under SECTION I - Additional Coverages **G.** in this Policy, the limit as provided in the respective additional coverage will apply.

6. Under paragraphs **2.a.** and **2.b.** above any ensuing loss to property described in Coverages **A** and **B** not excluded or otherwise precluded in this Policy is covered.

In this event, the $10,000 limit on coverage in **3.** above applies to any ensuing loss to property described in Coverages **A** and **B** not excluded or otherwise precluded in this Policy, caused by water or steam described in paragraphs **2.b.(6)** and **2.b.(9)** above, except the $10,000 limit on coverage will not apply when the ensuing loss to the property is:

a. Fire;

b. Explosion; or

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 46 of 69

c. Collapse, only as covered under **G.7.** SECTION I – Additional Coverages.

However, if covered loss caused by water or steam described in paragraphs **2.b.(6)** and **2.b.(9)** above results in ensuing loss from "Fungi", Wet Or Dry Rot, Yeast Or Bacteria described under **G.10.** SECTION I – Additional Coverages, the $10,000 limit on coverage in **3.** above will apply to the covered loss and the limit described in **G.10** SECTION I – Additional Coverages will apply to the ensuing loss.

This $10,000 limit on coverage in **A.3.** and **A.6.** above does not create additional coverage or increase the limit of liability applying to the damaged property.

### Part A.

### Catastrophic Ground Cover Collapse.

1. We insure for direct physical loss to the "principal building" under Coverage **A** caused by the peril of "catastrophic ground cover collapse".

   Damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute a loss resulting from a "catastrophic ground cover collapse".

2. Direct physical loss from "catastrophic ground cover collapse" does not apply to the costs to repair the depression or hole, or to stabilize the land on the insured premises.

   If we at our option repair the "principal building" under Coverage **A** for direct physical loss resulting from the peril of "catastrophic ground cover collapse", we will stabilize the "principal building's" land in accordance with our professional engineers recommended repairs.

3. This peril does not increase the limit of liability that applies to the damaged property.

4. This peril does not apply to property covered under Coverage **B** – Other Structures.

The SECTION I – Earth Movement And Settlement exclusion **A.2.** does not apply to "catastrophic ground cover collapse".

The SECTION I – Loss Caused By "Sinkhole" exclusion **A.9.** does not apply to "catastrophic ground cover collapse".

### B. Coverage C – Personal Property

We insure for direct physical loss to the property described in Coverage **C** caused by a peril listed below unless the loss is excluded in SECTION I – EXCLUSIONS.

1. **Fire Or Lightning**

2. **Windstorm Or Hail**

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail first damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

3. **Explosion**

4. **Riot Or Civil Commotion**

5. **Aircraft**, including self-propelled missiles and spacecraft.

6. **Vehicles**

7. **Smoke**, meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism Or Malicious Mischief**

9. **Theft**, including attempted theft and loss of property from the "residence premises" when it is likely that the property has been stolen.

   Personal property contained in any bank, trust or safe deposit company or public warehouse will be considered on the "residence premises".

   This peril does not include loss caused by theft:

   a. While property is off the "residence premises";

   b. Committed by an "insured";

   c. In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

   d. From that part of a "residence premises" rented by an "insured" to other than an "insured".

10. **Falling Objects**

    This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight Of Ice, Snow Or Sleet** which causes damage to property contained in a building.

12. **Accidental Discharge Or Overflow Of Water Or Steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 47 of 69

This peril does not include loss:

a. To the system or appliance from which the water or steam escaped;

b. Caused by or resulting from freezing except as provided in the peril of freezing below;

c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises";

d. Caused by constant or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years, unless such seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure; or

e. Otherwise excluded or limited elsewhere in the Policy.

In this peril, a plumbing system or household appliance does not include:

a. A sump, sump pump, irrigation system, or related equipment; or

b. A roof drain, gutter, down spout, or similar fixtures or equipment.

In the event the exclusion in **12.d.** above applies, we will not pay for any damages sustained starting from the first day and instance the occurrence of constant or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor began.

13. **Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is "vacant" or "unoccupied", unless you have used reasonable care to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current**

This peril does not include loss to a tube, transistor or similar electronic component.

16. **Volcanic Eruption** other than loss caused by earthquake, land shock waves or tremors.

17. **Catastrophic Ground Cover Collapse**

a. We insure for direct physical loss to property covered under Coverage **C** located within the "principal building" resulting from a "catastrophic ground cover collapse", unless the loss is excluded elsewhere in this Policy.

b. Damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute a loss resulting from a "catastrophic ground cover collapse".

c. Direct physical loss to property covered under Coverage **C** from the peril of "catastrophic ground cover collapse" does not apply to the costs to repair the depression or hole, or to stabilize the land on the insured premises.

This peril does not increase the limit of liability that applies to the damaged property.

The SECTION **I** – Earth Movement And Settlement exclusion **A.2.** does not apply to "catastrophic ground cover collapse".

The SECTION **I** – Loss Caused By "Sinkhole" exclusion **A.9.** does not apply to "catastrophic ground cover collapse".

Under SECTION **I** - Perils Insured Against, a plumbing system includes a septic system.

**SECTION I – EXCLUSIONS**

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

1. **Ordinance Or Law**, meaning any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris.

This Exclusion **A.1.** does not apply to the amount of coverage that may be provided for under Additional Coverages, **G.8.** Glass or Safety Glazing Material or **G.11.** Ordinance or Law;

b. The requirements of which result in a loss in value to property; or

c. Requiring any "insured" or others to:

(1) Test for;

Includes copyrighted material of Insurance Services Office, Inc., with its permission

Unique Code : CAA-FBH-BCAJ-CCHCABJE-BCJCDBI-C Page 48 of 69

(2) Monitor;

(3) Clean up;

(4) Remove;

(5) Contain;

(6) Treat;

(7) Detoxify;

(8) Neutralize; or

(9) In any way respond to, or assess the effects of:

Pollutants.

d. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including:

(1) Smoke;

(2) Vapor;

(3) Soot;

(4) Fumes;

(5) Acids;

(6) Alkalis;

(7) Chemicals; and

(8) Waste.

Waste includes materials to be recycled, reconditioned, or reclaimed.

This Exclusion **A.1.** applies whether or not the property has been physically damaged.

2. **Earth Movement And Settlement**, meaning:

a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

b. Landslide;

c. Mine subsidence;

d. Mudflow or mudslide;

e. Earth sinking, rising or shifting;

f. Clay shrinkage or other expansion or contraction of soils or organic materials;

g. Decay of buried or organic materials;

h. Settling, cracking or expansion of foundations; or

i. Scouring;

Whether caused by natural or man made activities; unless direct loss by:

a. Fire; or

b. Explosion;

ensues and then we will pay only for the ensuing loss.

3. **Water Damage,** meaning:

a. Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, storm surge, wave wash, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

b. Water which:

(1) Backs up through sewers or drains;

(2) Backs up or is otherwise discharged from a septic system or drain field, or related equipment or similar systems; or

(3) Overflows or is otherwise discharged from:

(a) A sump, sump pump, irrigation system, or related equipment; or

(b) A roof drain, gutter, down spout, or similar fixtures or equipment;

c. Water below the surface of the ground, including water which exerts pressure on or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

d. Waterborne material, sewage or any other substance, carried or otherwise moved by any of the water referred to in **A.3.a.** through **A.3.c.** of this Exclusion.

This Exclusion **A.3.** applies regardless of whether any of the above, in **A.3.a.** through **A.3.d.**, is caused by or results from human or animal forces or any act of nature.

This Exclusion **A.3.** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water, waterborne material, sewage, or any other substance, from a dam, levee, seawall, or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above in **A.3.a.** through **A.3.d.** is covered.

4. **Power Failure**, meaning:

The failure of power or other utility service if the failure takes place off the "residence premises".

But if the failure of power or other utility service results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss or damage caused by that Peril Insured Against.

5. **Neglect**, meaning neglect of any "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

6. **War**, including the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

7. **Nuclear Hazard**, to the extent set forth in the Nuclear Hazard Clause of SECTION I – CONDITIONS.

8. **Intentional Loss**, meaning any loss arising out of any act committed:

a. By or at the direction of an "insured"; and

b. With the intent to cause a loss.

9. **Loss Caused By "Sinkhole"**

a. "Sinkhole" means:

(1) A landform created by subsidence of soils, sediment, or rock as underlying strata are dissolved by ground water.

(2) A "sinkhole" forms by collapse into subterranean voids created by dissolution of limestone or dolostone or by subsidence as these strata are dissolved.

10. **"Fungi", Wet Or Dry Rot, Yeast Or Bacteria** meaning:

The presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, yeast or bacteria.

This Exclusion **A.10.** does not apply:

a. When "fungi", wet or dry rot, yeast or bacteria results from fire or lightning; or

b. To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Yeast Or Bacteria Additional Coverage under SECTION I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, yeast or bacteria is covered.

11. **Existing Damage**, meaning:

a. Damages which occurred prior to policy inception regardless of whether such damages were apparent at the time of the inception of this Policy or discovered at a later date;

b. Damages existing prior to the time of loss; or

c. Any unrepaired part or portion of a loss to property for which you have made an insurance claim, whether or not paid by insurance.

Paragraph **c.** above does not apply, for the same loss, to a reopened claim or a supplemental claim described under SECTION I – CONDITIONS, Condition **U.**

However, under this Exclusion **A.11.** any ensuing loss to property described in SECTION I – Property Coverages not otherwise excluded or excepted in this Policy is covered.

This Exclusion **A.11.** does not apply in the event of a total loss caused by a Peril Insured Against.

12. **Constant Or Repeated Seepage Or Leakage Of Water Or Steam**, or the presence or condensation of humidity, moisture or vapor; except as otherwise provided under SECTION I - PERILS INSURED AGAINST, **A.** Coverage **A** – Dwelling And Coverage **B** – Other Structures paragraph **2.b.(6)(c)** and **B.** Coverage **C** – Personal Property paragraph **12.d.**

13. **Accidental Discharge Or Overflow Of Water Or Steam** from:

a. Within a plumbing, heating, air conditioning or automatic fire protective sprinkler system;

b. Within a household appliance for heating water; or

c. Within a household appliance.

This Exclusion **A.13.** applies only while the dwelling is "vacant" or "unoccupied" for more than 30 consecutive days or being constructed; unless you have used reasonable care to:

a. Shut off the water supply; and

b. Drain the system and appliances of water.

Systems and appliances do not include outdoor swimming spas or outdoor irrigation wells.

B. We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following.

1. **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph **A.** above to produce the loss;

Unique Code : CAA-FBH-BCAJJ-CCHCABJE-BCJCDBI-C Page 49 of 69

Unique Code : CAA-FBH-BCAJ-CCHCABJE-BCJCDBI-C Page 50 of 69

**2. Acts Or Decisions**, including the failure to act or decide, of any person, group, organization or governmental body;

**3. Faulty, Inadequate Or Defective:**

   **a.** Planning, zoning, development, surveying, siting;

   **b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   **c.** Materials used in repair, construction, renovation or remodeling; or

   **d.** Maintenance;

   of part or all of any property whether on or off the "residence premises".

However, under exclusions **B.1.**, **2** or **3.** above, any ensuing loss to property described in Coverages **A** and **B** not otherwise excluded or excepted in this Policy is covered.

## SECTION I – CONDITIONS

### A. Insurable Interest And Limit of Liability

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   **1.** To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

   **2.** For more than the applicable limit of liability.

### B. Duties After Loss

An "assignment agreement" does not change the obligations to perform the duties required under this Policy.

   **1.** Duties Of An "Insured"

   In case of a loss to covered property, we have no duty to provide coverage under this Policy to you or any other "insured" seeking coverage, if there is failure to comply with any of the following duties. These duties must be performed either by you, any other "insured" seeking coverage, or by a representative of either.

      **a.** Give prompt notice to us or the insurance agent shown in the Declarations.

      Except for reasonable emergency measures taken under SECTION I – Property Coverages **F.** Reasonable Emergency Measures, there is no coverage for repairs that begin before the earlier of:

         **(1)** 72 hours after we are notified of the loss;

         **(2)** The time of loss inspection by us; or

         **(3)** The time of other approval by us;

      **b.** Protect the covered property from further damage. The following must be performed:

         **(1)** Take reasonable emergency measures that are necessary to protect the covered property from further damage, as provided under SECTION I – Property Coverages **F.** Reasonable Emergency Measures.

         To the degree reasonably possible, damaged property must be retained for us or any person authorized to act on our behalf, to inspect; and

         **(2)** Keep an accurate record of expenses;

      **c.** As soon as reasonably possible, notify the police in case of loss by theft or loss by vandalism and provide us a copy of the police report;

      **d.** As soon as reasonably possible, notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in Additional Coverage **G.5.** Credit Card, Fund Transfer Card, Forgery And Counterfeit Money under SECTION I – Property Coverages;

      **e.** Send to us, within 60 days after our request, a signed, sworn statement in a Proof of Loss form provided by us and completed in its entirety, which sets forth, to the best of your knowledge and belief:

         **(1)** The description of the loss, including the date and time of the loss, the cause of the loss, a description of how the loss occurred, when the loss was discovered, and who discovered the loss;

         **(2)** The names of all persons who resided at the insured location at the time of loss;

         **(3)** The interests of all "insureds", "assignees" if any, and all others in the property involved and all liens on the property;

         **(4)** Other insurance which may cover the loss;

         **(5)** Changes in title or occupancy of the property during the term of the Policy;

         **(6)** Specifications of the damage to the dwelling and other structures; including:

            **(a)** Detailed descriptions of the damage to the property;

            **(b)** Repair estimates which show the extent of damage to each item or property;

Unique Code : CAA-FBH-BCAJ-CCHCABJE-BCJCDBI-C Page 51 of 69

(c) Estimated amount(s) to repair or replace each item of property; and

(d) Amount(s) of payment made for any temporary or permanent repairs.

Photographs and any other supporting documentation that exists should be included to the extent it is reasonable and practical to obtain;

(7) The inventory of damaged personal property described in **1.l.** below;

(8) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(9) Evidence or affidavit that supports a claim under Additional Coverage **G.5.** Credit Card, Fund Transfer Card, Forgery And Counterfeit Money under SECTION **I** - Property Coverages, stating the amount and cause of loss;

**f.** Produce any updates to the documents and information in **1.a.** through **1.e.** above, including revised descriptions of loss, scope of loss, estimates or other supporting information:

(1) As this information becomes available, and if additional loss or damage is discovered or incurred; and

(2) If you are provided with new estimates or invoices regarding the losses submitted or not submitted in the proof of loss.

**g.** Cooperate with us or any person authorized to act on our behalf, in the investigation of a claim.

This includes speaking and sharing information with us or any person authorized to act on our behalf, and providing documents which can be reasonably obtained by you, to facilitate our investigation of the claim.

A representative of an "insured":

(1) Must cooperate with our investigation;

(2) Must not act in any manner that prevents us or any person authorized to act on our behalf, from investigating the claim; and

(3) May not act in any manner to obstruct our investigation;

**h.** As often as we reasonably require, allow us or any person authorized to act on our behalf:

(1) Access to the "residence premises";

(2) To inspect the "residence premises", and to inspect subject to **1.o.** and **p.** below all damaged property prior to its removal from the "residence premises"; and

(3) To require an "insured" or their representative, or both if reasonably possible, to be present at our inspection and to assist in identifying the damaged property during the inspection;

**i.** At our request, identify the person or persons with knowledge of how the loss occurred and the extent of damage;

**j.** Execute all work authorizations and allow contractors and related parties entry to the property;

**k.** Keep an accurate record of repair expenses;

**l.** Prepare an inventory of damaged personal property showing the:

(1) Quantity;

(2) Description;

(3) Actual cash value; and

(4) Amount of loss.

Attach all bills, receipts and related documents that justify the figures in the inventory;

**m.** As often as we or any person authorized to act on our behalf, reasonably require:

(1) Show the damaged property retained as required by this Policy; and

(2) Provide requested records and documents, including all updates to the revised documentation, and permit us or any person authorized to act on our behalf, to make copies;

**n.** Cooperate in obtaining and executing any necessary municipal, county or other governmental documentation or permits for repairs to be made and any necessary work authorizations, as required by these entities;

Unique Code : CAA-FBH-BCAJ-CCHCABJE-BCJCDBI-C Page 52 of 69

**o.** To the degree reasonably possible, retain the damaged property and any photographs of the damaged property.

Allow us or any person authorized to act on our behalf, to inspect the retained property and make copies of the photographs;

**p.** To the degree reasonably possible, prior to materially altering, destroying, trenching or excavating any part of the property or structure insured, allow us or any person authorized to act on our behalf, the opportunity to inspect the property;

**q.** To the degree reasonably possible, you must permit us or any person authorized to act on our behalf, to take samples of the damaged and undamaged property for inspection, testing and analysis;

**r.** As often as we or any person authorized to act on our behalf reasonably require:

**(1)** You or any "insured";

**(2)** Any member, officer, director, partner or similar representative of the association, corporation or other entity, if you are the association, corporation or other entity, who is an "insured"; and

**(3)** Any agent or representative, including any public adjuster, engaged on behalf of you or any "insured", or any member, officer, director, partner or similar representative of an association, corporation, or other entity, described in **r.(2)** above;

must:

**(1)** Submit to examinations under oath and recorded statements, at the location insured or other reasonable location designated by us, while not in the presence of each other or any other "insured";

**(2)** Provide government issued photo identification. If you do not possess government issued photo identification, a signed sworn statement identifying who you are may be provided; and

**(3)** Sign any transcript of the examinations under oath and recorded statements.

Such examinations and recorded statements must either be in-person or utilize video and audio technology, or both, as determined by us.

**2.** Duties Of An "Assignee"

In case of a loss to covered property, we have no duty to provide coverage under this Policy to an "assignee" if there is failure by the "assignee" to comply with any of the following duties. These duties must be performed by the "assignee".

Pursuant to Florida law, in a claim arising under an "assignment agreement", an "assignee" has the burden to demonstrate that we are not prejudiced by the "assignee's" failure to perform the duties in **a.** through **d.** below.

**a.** Cooperate with us in the investigation of a claim;

**b.** Maintain records of all services provided under the "assignment agreement";

**c.** Provide us requested records and documents related to the services provided, and permit us to make copies of such records and documents.

This includes providing accurate and up-to-date revised estimates of the scope of work to be performed as supplemental or additional repairs are required;

**d.** Deliver a copy of the executed "assignment agreement" to us within 3 business days after executing the "assignment agreement" or the date on which work begins, whichever is earlier;

**e.** Must perform the work in accordance with accepted industry standards.

**3.** Application Of Duties

The duties above apply regardless of whether a person retains or is assisted by a party who provides legal advice, insurance advice or expert claim advice, regarding an insurance claim under this Policy.

**C. Loss Settlement**

Covered property losses are settled as follows:

**1.** Property of the following types:

**a.** Personal property;

**b.** Carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

**c.** Structures that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

**2.** Buildings under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

**a.** If, at the time of loss, the amount of insurance in this Policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

**(1)** The limit of liability under this Policy that applies to the building;

**(2)** The replacement cost of that part of the building damaged for like construction and use on the same premises; or

**(3)** The necessary amount to repair or replace the damaged building.

**b.** If, at the time of loss, the amount of insurance in this Policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this Policy that applies to the building:

**(1)** The actual cash value of that part of the building damaged; or

**(2)** That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this Policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

**(1)** Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

**(2)** Those supports in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement;

**(3)** Underground flues, pipes, wiring and drains; and

**(4)** Structures and other property excluded or not covered elsewhere in your Policy.

**d.** We will initially pay at least the actual cash value of the insured loss, less any applicable deductible.

We will then pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred, subject to **2.a.** and **2.b.** above.

If a total loss of the dwelling occurs, the provisions of **2.d.** above do not apply and we will pay the replacement cost coverage without reservation or holdback of any depreciation in value, pursuant to Section 627.702, Florida Statutes.

This does not prohibit us from exercising our right to repair damaged property in compliance with this Policy and pursuant to Section 627.702(7), Florida Statutes.

**e.** If the dwelling where loss or damage occurs has been "vacant" for more than 30 consecutive days before the loss or damage, we will:

**(1)** Not pay for any loss or damage caused by any of the following perils, even if they are a Peril Insured Against:

**(a)** Vandalism;

**(b)** Malicious mischief;

**(c)** Sprinkler leakage caused by or arising out of the freezing of a fire protective sprinkler system, unless you have protected the system against freezing;

**(d)** Dwelling glass breakage;

**(e)** Water damage;

**(f)** Theft; or

**(g)** Attempted theft.

**(2)** Reduce the amount we would otherwise pay for a covered loss by 15%.

Dwellings under construction are not considered "vacant".

Unique Code : CAA-FBH-BCAJ-CCCHCABJE-BCJCDBI-C Page 53 of 69

f. In the event of a "catastrophic ground cover collapse", any repairs must be made in accordance with the recommendations of our professional engineer.

If our professional engineer selected or approved by us determines that the repairs cannot be completed within the applicable Limit of Insurance, we will at our option; either:

(1) Complete the professional engineer's recommended repairs; or

(2) Pay the policy limits without a reduction for the repair expenses incurred.

### D. Loss To A Pair Or Set

In case of loss to a pair or set we may elect to:

1. Repair or replace any part to restore the pair or set to its value before the loss; or

2. Pay the difference between actual cash value of the property before and after the loss.

### E. Glass Replacement

Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required.

### F. Alternative Dispute Resolution

1. Mediation.

If you, or an "assignee" of the Policy benefits, and we are in dispute regarding a claim under this Policy, either you, an "assignee" of the Policy benefits or we may request a mediation of the loss in accordance with the rules established by the Florida Department of Financial Services.

We are not, however, required to participate in any mediation requested by an "assignee" of the Policy benefits.

a. If the dispute is mediated the settlement in the course of the mediation is binding only if both parties agree, in writing, on a settlement.

However, you may rescind the settlement within 3 business days after reaching settlement, unless you have cashed or deposited any settlement check or draft we disbursed to you for the disputed matters as a result of the mediation conference.

b. We will pay the cost of conducting any mediation conferences.

If you fail to appear at the conference, the conference must be rescheduled upon payment by you of the costs of a rescheduled conference.

c. However, if we fail to appear at a mediation conference requested by you without good cause, we will pay:

(1) The actual cash expenses you incurred while attending the conference; and

(2) Also pay the mediator's fee for the rescheduled conference.

2. Appraisal.

Appraisal is an alternative dispute resolution method to address and resolve disagreement regarding the amount of the covered loss.

a. If you or an "assignee" of the Policy benefits, and we fail to agree on the amount of loss, either party may demand an appraisal of the loss. If you, an "assignee" of the Policy benefits, or we demand appraisal, the demand for appraisal must be in writing and shall include an estimate of the amount of any dispute that results from the covered cause of loss.

b. The estimate in 2.a. above shall include a description of each item of damaged property in dispute as a result of the covered loss, along with the extent of damage and the estimated amount to repair or replace each item.

c. In this event, each party will choose a competent appraiser within 20 days after receiving a written demand from the other.

d. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss.

e. If they fail to agree, the two appraisers will choose a competent and impartial umpire. If they cannot agree upon an umpire within 15 days, you, an "assignee" of the Policy benefits, or we may request that the choice be made by a judge of a court of record located in the county described in the "Location of Residence Premises" of the Declarations.

f. The two appraisers will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

g. The appraisal award will be in writing and shall include the following:

(1) A detailed list, including the amount to repair or replace, of each specific item included in the award from the appraisal findings;

Unique Code : CAA-FBH-BCAJ-CCHCABJE-BCJCDBI-C Page 54 of 69

(2) The agreed amount of each item, its replacement cost value and corresponding actual cash value; and

(3) A statement of "This award is made subject to the terms and conditions of the policy."

h. Each party will:

(1) Pay its own appraiser, including their costs associated with producing the estimate described in **2.a.** above; and

(2) Pay the reasonable fees and the reasonable expenses of the appraisal and umpire equally.

i. You, we, the appraisers and the umpire shall be given reasonable and timely access to inspect the damaged property, in accordance with the terms of the policy.

j. If, however, we requested the mediation in **1.** above and either party rejects the mediation results, you are not required to submit to, or participate in, any appraisal of the loss as a precondition to action against us for failure to pay the loss.

k. If, however, you or any party other than us requested the mediation in **1.** above, we may still demand appraisal.

**G. Other Insurance And Service Agreement**

If a loss covered by this Policy is also covered by:

1. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this Policy bears to the total amount of insurance covering the loss.

2. A service agreement, this insurance is excess over any amounts recoverable under any such agreement.

   Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**H. Suit Against Us**

1. No action can be brought against us; unless:

   a. Notice of the loss has been given to us;

   b. There has been full compliance with all of the terms of this Policy applicable to an "insured";

   c. If there is failure to agree on a settlement regarding the loss, prior to filing suit, we must be notified in writing of your disagreement; and

d. The action is started within 5 years after the date of the loss.

Condition **H.1.** above is not applicable to an "assignee".

2. Suit By An "Assignee".

   a. An "assignee" must provide us with a written notice of intent to initiate litigation before filing suit under this Policy.

      (1) Such notice must be served by certified mail, return receipt requested, or electronic delivery, at least 10 business days before filing suit, but may not be served before we have made a coverage determination and pay or deny your claim in accordance with SECTION I – CONDITIONS, Condition **J.** Loss Payment, paragraph **J.3.(c)**.

         Instructions regarding electronic submission and obtaining evidence of delivery in a form of a receipt are available on our website www.citizensfla.com.

      (2) The notice must specify the damages in dispute, the amount claimed, and a presuit settlement demand.

      (3) Concurrent with any written notice of intent to initiate litigation, and as a precondition to filing suit, an "assignee" must provide us a detailed written invoice or estimate of services, including itemized information on equipment, materials, and supplies; the number of labor hours; and, in the case of work performed, proof that the work has been performed in accordance with accepted industry standards.

   b. As a condition precedent to filing a suit under the Policy, and if required by us, an "assignee" must submit to examinations under oath and recorded statements conducted by us or our representative that are reasonably necessary, at the location insured, or other reasonable location designated by us or our representative, while not in the presence of another employee of the "assignee", or any other "assignee", or any "insured".

      (1) Provide government issued photo identification. If you do not possess government issued photo identification, a signed sworn statement identifying who you are may be provided; and

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 55 of 69

Unique Code : CAA-FBH-BCAJ-CCHCABJE-BCJCDBI-C Page 56 of 69

**(2)** Sign any transcript of the examinations under oath and recorded statements.

Such examinations and recorded statements must either be in-person or utilize video and audio technology, or both, as determined by us; and

Examinations under oath and recorded statements must be based upon the scope of the work and complexity of the claim and limited to matters related to the services provided, the cost of the services and the "assignment agreement".

**c.** No action can be brought against us unless the action is started within 5 years after the date of the loss.

**I. Our Option**

**1.** If we give or mail you, or "electronically transmit" to you, written notice within 30 days after we receive your signed, sworn proof of loss; and:

**a.** The damaged property under Coverage **A –** Dwelling in SECTION **I –** PROPERTY COVERAGES is insured for Replacement Cost loss settlement as outlined in SECTION **I –** CONDITIONS, **C.** Loss Settlement:

**(1)** We may, in lieu of payment and at our option, repair any part or item of the damaged Coverage **A** property with material or property of like kind and quality.

**(2)** If an identical replacement is part of the repair and is not available, we may, at our option, substitute replacement of equal or greater features, functions or capacities of the damaged property.

**b.** The damaged property is insured for Actual Cash Value loss settlement as outlined in SECTION – **I** CONDITIONS, **C.** Loss Settlement:

**(1)** We may, in lieu of payment and at our option, repair, rebuild or replace any part or item of the damaged property with material or property of like kind and quality.

**(2)** If an identical replacement is not available, we may, at our option, substitute replacement of equal or greater features, functions or capacities of the damaged property.

**2.** If the damaged property is insured for Replacement Cost loss settlement as outlined in SECTION **I –** CONDITIONS, **C.** Loss Settlement, we will pay the amount of loss, as noted in Paragraph **C.2.d.** of the Loss Settlement provision.

**3.** Paragraphs **I.1.** and **I.2.** above do not apply to the services that are provided under form **CIT 04 85**.

**4.** Paragraphs **I.1.** and **I.2.** above do not apply to repairs, replacement or rebuilding of covered property that are provided under form **CIT 04 86**.

**5.** Our right to repair, rebuild or replace and our decision to do so is a material part of this Policy and under no circumstances relieves you or us of the duties and obligations under this Policy.

**J. Loss Payment**

**1.** We will adjust all losses with you.

**2.** We will pay you unless some other person is named in the Policy or is legally entitled to receive payment. Any loss payment will be paid to you and them, as each interest appears.

**3.** Loss will be payable:

**a.** 20 days after we receive your proof of loss and reach written agreement with you; or

**b.** 60 days after we receive your proof of loss; and

**(1)** There is an entry of a final judgment; or

**(2)** There is a filing of an appraisal award or a mediation settlement with us.

**c.** Within 90 days after we receive notice of an initial, reopened, or supplemental property insurance claim from you, where for each initial, reopened, or supplemental property insurance claim, we shall pay or deny such claim or portion of such claim, unless there are circumstances beyond our control which reasonably prevent such payment.

Paragraph **3.c.** above does not form the sole basis for a private cause of action against us.

**4.** Payment of a portion of the claim(s) being asserted in a loss under this Policy does not act as a waiver of our right to dispute or deny any unpaid portion of any claim(s) that you may assert arose from a loss.

Unique Code : CAA-FBH-BCAJJ-CCHCABJE-BCJCDBI-C Page 57 of 69

5. In the event any services, or part or portion of any services described in form **CIT 04 85** are performed by the "Contractor" under **CIT 04 85**, paragraphs **1.**, **2.** and **3.** above are deleted and replaced with paragraph **1.** under Condition **J.** in **CIT 04 85**.

6. In the event any repairs, replacement or rebuilding, or any part or portion of any repairs, replacement or rebuilding of property, covered under Coverage **A** or Coverage **B** which under **CIT 04 86** are performed by the "Contractor" as described in the scope of repairs for covered damages, paragraphs **1.**, **2.** and **3.** above are deleted and replaced with paragraphs **1.**, **2.** and **3.** under Condition **J.** in **CIT 04 86**.

7. For all other covered loss or covered damage, not part of paragraph **6.** above, we will pay you in accordance with paragraphs **1.** through **5.** above.

8. In no event will we make duplicate payments for the same element of loss because of the "insured's" failure to notify us of termination of the "assignment agreement".

**K. Abandonment Of Property**

We need not accept any property abandoned by an "insured".

**L. Mortgage Clause**

The word "mortgagee" includes trustee and lienholder.

1. If a mortgagee is named in this Policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear.

   If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware.

      This notice includes notifying us of foreclosure or if a foreclosure has been initiated;

   b. Pays any premium due under this Policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

3. If we decide to cancel or not to renew this Policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest.

      In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**M. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this Policy.

**N. Nuclear Hazard Clause**

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in SECTION **I**.

3. This Policy does not apply under SECTION **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**O. Recovered Property**

If you or we recover any property for which we have made payment under this Policy, you or we will notify the other of the recovery.

At your option, the property will be returned to or retained by you or it will become our property.

If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**P. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

Unique Code : CAA-FBH-BCAJ-CCCHCABJE-BCJCDBI-C Page 58 of 69

**Q. Adjustment to Property Coverage Limits**

If your Policy is a renewal with us, the limit of liability for Coverages **A**, **B**, **C** and **D** may be adjusted.

Any change in the limits of liability indicated above does not, in any way, represent, warrant, or guarantee to any person or entity, that:

1. These adjustments will keep pace with inflation; or

2. The amounts of coverage are adequate to repair or rebuild any specific building or structure.

**R. Deductible**

Unless otherwise noted in this Policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under SECTION **I** that exceeds the deductible amount shown in the Declarations.

**S. Policy Period**

This Policy applies only to loss which occurs during the policy period.

**T. Incorrect Statements Or Representations, Concealment Or Fraudulent Conduct**

1. We do not provide coverage under this Policy to you or any "insureds" who, before, during or after a loss, separately or in any manner in conjunction with each other or in conjunction with any third parties, have, relating to this insurance:

   a. Made one or more material incorrect statement or representations;

   b. Concealed any material fact or circumstance; or

   c. Engaged in fraudulent conduct.

2. We do not provide coverage under this Policy to you or any "insureds", when you or any "insured" had knowledge of, but failed to disclose that any claimant, or agent or representative of you, any "insured", or any claimant, engaged in any of the behavior described in **3.a.** through **3.c.** below.

3. We do not provide coverage under this Policy to any other claimant or other claimants seeking benefits under the policy on any basis who, before, during or after a loss, separately or in any manner in conjunction with each other, you, any "insureds" or any third parties, have, relating to this insurance:

   a. Made one or more material incorrect statement or representations;

b. Concealed any material fact or circumstance; or

c. Engaged in fraudulent conduct.

However, if this Policy has been in effect for more than 90 days, we may not deny a claim filed by you or an "insured" on the basis of credit information available in public records.

**U. Claim, Supplemental Claim, Or Reopened Claim**

1. A claim or reopened claim is barred unless notice of the claim is given to us in accordance with the terms of the Policy within 2 years after the date of loss.

   A reopened claim means a claim that we have previously closed, but that has been reopened upon an insured's request for additional costs for loss or damage previously disclosed to us.

2. A supplemental claim is barred unless notice of the supplemental claim is given to us in accordance with the terms of the Policy within 3 years after the date of loss.

   A supplemental claim means a claim for additional loss or damage from the same peril which we have previously adjusted or for which costs have been incurred while completing repairs or replacement pursuant to an open claim for which timely notice was previously provided to us.

3. For claims resulting from hurricanes, tornadoes, windstorms, severe rain, or other weather-related events, the date of loss is the date that the hurricane made landfall or the tornado, windstorm, severe rain, or other weather-related event is verified by the National Oceanic and Atmospheric Administration.

**SECTION II – LIABILITY COVERAGES**

**A. Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

### B. Coverage F – Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

### A. "Motor Vehicle Liability"

1. Coverages **E** and **F** do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

   a. Is registered for use on public roads or property;

   b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

   c. Is being:

      (1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

      (2) Rented to others;

      (3) Used to carry persons or cargo for a charge; or

      (4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability", unless the "motor vehicle" is:

   a. In dead storage on an "insured location";

   b. Located on the "residence premises" and used solely to service the residence;

   c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

      (1) Being used to assist a handicapped person; or

      (2) Parked on an "insured location";

   d. A motorized golf cart that is owned by an "insured", designed to carry up to four persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

      (1) A golfing facility and is parked or stored there, or being used by an "insured" to play the game of golf which includes:

         (a) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

         (b) Cross public roads at designated points to access other parts of the golfing facility;

   e. However, any coverage provided in **A.2.a.**, **2.b.**, **2.c.** and **2.d.** above does not apply to land conveyances including, but not limited to, all terrain vehicles, utility terrain vehicles, mopeds, scooters except as provided in **A.2.c.** above, motorcycles, and motorized bicycles, whether subject to motor vehicle registration or not.

### B. "Watercraft Liability"

1. Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

   a. Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

   b. Rented to others;

   c. Used to carry persons or cargo for a charge; or

   d. Used for any "business" purpose.

2. If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

   a. Is stored;

   b. Is a sailing vessel, with or without auxiliary power, that is:

      (1) Less than 26 feet in overall length; or

      (2) 26 feet or more in overall length and not owned by or rented to an "insured"; or

Unique Code : CAA-FBH-BCAJ-CCHCABJE-BCJCDBI-C Page 59 of 69

**c.** Is not a sailing vessel or "personal watercraft" and is powered by:

**(1)** An inboard or inboard-outdrive engine or motor of:

**(a)** 50 horsepower or less and not owned by an "insured"; or

**(b)** More than 50 horsepower and not owned by or rented to an "insured"; or

**(2)** One or more outboard engines or motors with:

**(a)** 25 total horsepower or less;

**(b)** More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Personal Watercraft Liability"**

This Policy does not cover "personal watercraft liability".

**D. "Aircraft Liability"**

This Policy does not cover "aircraft liability".

**E. "Hovercraft Liability"**

This Policy does not cover "hovercraft liability".

**F. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

**a.** Is of a different kind, quality or degree than initially expected or intended; or

**b.** Is sustained by a different person, entity or property than initially expected or intended.

**2. "Business"**

**a.** Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This exclusion **F.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

**b.** This Exclusion **F.2.** does not apply to:

**(1)** The rental or holding for rental of an "insured location";

**(a)** On an occasional basis if used only as a residence;

**(b)** In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

**(c)** In part, as an office, school, studio or private garage;

**3. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4. "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

**a.** Owned by an "insured";

**b.** Rented to an "insured"; or

**c.** Rented to others by an "insured";

that is not an "insured location";

**5. War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**6. Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse;

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined under federal law.

Controlled Substances include, but are not limited to:

a. Cocaine;

b. LSD;

c. Marijuana; and

d. All narcotic drugs.

However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed health care professional.

9. **Paint; Radon; Radiation; Vapors; Fumes; Gas; Oil; Toxic Chemicals, Liquid or Gas; Waste Materials; Irritants, Contaminants or Pollutants**

"Bodily injury" or "property damage" arising:

a. Out of the ingestion of paint that has lead in it;

b. Out of the ingestion of paint that has lead compounds in it;

c. Out of the inhalation of paint that has lead in it;

d. Out of the inhalation of paint that has lead compounds in it;

e. From radon, or any other substance that emits radiation;

f. In any manner (including liability imposed by law) from the discharge, disposal, release or escape of:

(1) Vapors or fumes;

(2) Gas or oil;

(3) Toxic chemicals, liquid or gas;

(4) Waste materials; or

(5) Irritants, contaminants or pollutants.

All other conditions are the same.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Personal Watercraft Liability", **D.** "Aircraft Liability", **E.** "Hovercraft Liability" and **F.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**G. Coverage E – Personal Liability**

Coverage **E** does not apply to:

1. Liability:

a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under SECTION **II** – Additional Coverages;

b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

(1) That directly relate to the ownership, maintenance or use of an "insured location"; or

(2) Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in **a.** above or elsewhere in this Policy;

2. "Property damage" to property owned by the "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

3. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

a. Workers' compensation law;

b. Non-occupational disability law; or

c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this Policy:

a. Is also an insured under a nuclear energy liability policy issued by the:

(1) Nuclear Energy Liability Insurance Association;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada,

or any of their successors; or

b. Would be an insured under that Policy but for the exhaustion of its limit of liability;

6. "Bodily injury" to you or an "insured" as defined under Definition **7.a.** or **b.**

This exclusion also applies to any claim made or suit brought against you or an "insured" to:

a. Repay; or

b. Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured"; or

Unique Code : CAA-FBH-BCAJJ-CCHCABJE-BCJCDBI-C Page 61 of 69

7. "Bodily injury" or "property damage" caused by or arising out of any animal whether or not the injury occurs on your premises or any other location.

## H. Coverage F – Medical Payments To Others

Coverage **F** does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

   a. Occurs off the "insured location"; and

   b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

3. From any:

   a. Nuclear reaction;

   b. Nuclear radiation; or

   c. Radioactive contamination;

   all whether controlled or uncontrolled or however caused; or

   d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

## SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

## A. Claim Expenses

We pay:

1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

## B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this Policy. We will not pay for first aid to an "insured".

## C. Damage To Property Of Others

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

   a. To the extent of any amount recoverable under SECTION **I**;

   b. Caused intentionally by an "insured" who is 13 years of age or older;

   c. To property owned by an "insured";

   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

   e. Arising out of:

      (1) A "business" engaged in by an "insured";

      (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

      (3) The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft, "personal watercraft", or "motor vehicles".

      This Exclusion **C.2.e.(3)** does not apply to a "motor vehicle" that:

      (a) Is designed for recreational use off public roads;

      (b) Is not owned by an "insured"; and

      (c) At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

## D. Loss Assessment

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", charged during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded from coverage under SECTION **II** - Exclusions; or

   b. Liability for an act of a director, officer, or trustee in the capacity as a director, officer or trustee, provided such person:

Unique Code : CAA-FBH-BCAJJ-CCHCABJE-BCJCDBI-C Page 62 of 69

Unique Code : CAA-FBH-BCAJJ-CCHCABJE-BCJCDBI-C Page 63 of 69

**(1)** Is elected by the members of a corporation or association of property owners; and

**(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

**2.** Paragraph **J.** Policy Period under SECTION **II –** Conditions does not apply to this Loss Assessment Coverage.

**3.** Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

**a.** One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

**b.** A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

**4.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

## SECTION II – CONDITIONS

### A. Limit Of Liability

**1.** Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage **E** as shown in the Declarations.

All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

**2.** Vicarious Parental Sublimit Of Liability

Subject to Paragraph **1.** above, our total liability under Coverage **E** for damages for which an "insured" is legally liable because of statutorily imposed vicarious parental liability not otherwise excluded is $10,000. This sublimit is within, but does not increase, the Coverage **E** limit of liability.

**3.** The limit of liability in **1.** above and sublimit in **2.** above apply regardless of the number of "insureds", claims made or persons injured.

**4.** "Fungi", Wet Or Dry Rot, Yeast Or Bacteria Aggregate Sub-limit Of Liability

Subject to Paragraph **1.** above, our total liability under Coverage **E** for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened:

**a.** Inhalation of;

**b.** Ingestion of;

**c.** Contact with;

**d.** Exposure to;

**e.** Existence of; or

**f.** Presence of:

Any "fungi", wet or dry rot, yeast or bacteria will not be more than $50,000.

**5.** The limit of liability in **4.** above applies regardless of the:

**a.** Number of locations insured under the Policy;

**b.** Number of persons injured;

**c.** Number of persons whose property is damaged;

**d.** Number of "insureds"; or

**e.** Number of "occurrences" or claims made.

**6.** The Aggregate Sublimit in **4.** above applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

**7.** The sublimit in **4.** above is within, but does not increase, the Coverage **E** limit of liability.

**8.** Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Limit Of Liability for Coverage **F** shown in the Declarations.

### B. Severability Of Insurance

This insurance applies separately to each "insured", except with respect to the Aggregate Sublimit of Liability of $50,000 described under SECTION **II**, Conditions **A.3.**, "Fungi", Wet Or Dry Rot, Yeast Or Bacteria Sub-limit of Liability.

This condition will not increase our limit of liability for any one "occurrence".

### C. Duties After "Occurrence"

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this Policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

**1.** Give written notice to us or our agent as soon as is practical, which sets forth:

**a.** The identity of the Policy and the "named insured" shown in the Declarations;

**b.** Reasonably available information on the time, place and circumstances of the "occurrence"; and

Unique Code : CAA-FBH-BCAJ-CCHCABJE-BCJCDBI-C Page 64 of 69

c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

a. To make settlement;

b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

c. With the conduct of suits and attend hearings and trials; and

d. To secure and give evidence and obtain the attendance of witnesses;

5. With respect to **C.** Damage To Property Of Others under SECTION **II** – Additional Coverages, submit to us within 60 days after the loss a sworn statement of loss and show the damaged property, if in an "insured's" control;

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person – Coverage F – Medical Payments To Others.**

1. The injured person or someone acting for the injured person will:

a. Give us written proof of claim, under oath if required, as soon as is practical; and

b. Authorize us to obtain copies of medical reports and records.

2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

1. No action can be brought against us unless there has been compliance with the Policy provisions.

2. No one will have the right to join us as a party to any action against an "insured".

3. Also, no action with respect to Coverage **E** can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An Insured**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this Policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this Policy.

**I. Joint Obligations**

The terms of this Policy impose joint obligations on persons defined as an "insured". This means that the responsibilities, acts and failures to act of a person defined as an "insured" will be binding upon another person defined as an "insured".

**J. Policy Period**

This Policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**K. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made material false statements;

relating to this insurance.

However, if this Policy has been in effect for more than 90 days, we may not deny a claim filed by you or an "insured" on the basis of credit information available in public records.

**SECTIONS I And II – CONDITIONS**

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our Policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this Policy; or

2. An amendatory endorsement.

## B. Waiver Or Change Of Policy Provisions

A waiver or change of a provision of this Policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

## C. Cancellation

1. You may cancel this Policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the "residence premises" has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency, we may cancel this Policy only for the following reasons, with respect to the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the dwelling or other structure located on the "residence premises", by letting the first named insured know in writing of the date cancellation takes effect.

   This cancellation notice will be delivered to the first named insured, mailed to the first named insured at the mailing address shown in the Declarations, or "electronically transmitted" to the first named insured.

   Proof of mailing or "electronic transmittal" is sufficient proof of notice.

   a. When you have not paid the premium, we may cancel during this period by letting the first named insured know at least 10 days before the date cancellation takes effect.

   b. If:

      (1) There has been a material misstatement or fraud related to the claim;

      (2) We determine that an "insured" has unreasonably caused a delay in the repair of the dwelling or other structure; or

      (3) We have paid policy limits;

      we may cancel during this period by letting the first named insured know at least 45 days before the date cancellation takes effect.

   c. We shall be entitled to collect any additional premium required to keep the Policy in effect during this period.

   However, this provision (C.2.c.) does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the extension.

3. If the conditions described in Paragraph C.2. do not apply, we may cancel only for the following reasons:

   a. When this Policy has been in effect for 90 days or less, we may cancel immediately if there has been:

      (1) A material misstatement or misrepresentation; or

      (2) Failure to comply with underwriting requirements;

   b. We may also cancel this Policy subject to the following provisions.

      A written cancellation notice, together with the specific reason(s) for cancellation, will be delivered to the first named insured, mailed to the first named insured at the mailing address shown in the Declarations, or "electronically transmitted" to the first named insured.

      (1) When you have not paid the premium, we may cancel at any time by letting the first named insured know at least 10 days before the date cancellation takes effect.

      (2) When this Policy has been in effect for 90 days or less, we may cancel for any reason, except we may not cancel:

         (a) On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

         (b) On the basis of a single claim which is the result of water damage, unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

         (c) On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or household member of an "insured".

      Except as provided in Paragraphs C.3.a. and C.3.b.(1) above, we will let the first named insured know of our action at least 20 days before the date the cancellation takes effect.

      (3) When this Policy has been in effect for more than 90 days, we may cancel:

         (a) If there has been a material misstatement;

Unique Code : CAA-FBH-BCAJ-CCCHCABJE-BCJCDBI-C Page 66 of 69

**(b)** If the risk has changed substantially since the Policy was issued;

**(c)** In the event of a failure to comply, within 90 days after the date of effectuation of coverage, with underwriting requirements established by us before the date of effectuation of coverage;

**(d)** If the cancellation is for all insureds under policies of this type for a given class of insureds;

**(e)** On the basis of property insurance claims that are the result of an Act of God, if we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**(f)** On the basis of a single claim which is the result of water damage, if we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**(4)** When this Policy has been in effect for more than 90 days, we may not cancel:

**(a)** On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or household member of an "insured"; or

**(b)** On the basis of credit information available in public records.

**(5)** If any of the reasons listed in Paragraphs **C.3.b.(3)(a)** through **(f)** apply, we will give at least 120 days written notice to the first named insured before the date cancellation takes effect.

**4.** If the date of cancellation becomes effective during a "hurricane occurrence":

**a.** The date of cancellation will not become effective until the end of the "hurricane occurrence"; and

**b.** We shall be entitled to collect additional premium for the period beyond the original date of cancellation for which the Policy remains in effect.

However, this provision **(C.4.)** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the "hurricane occurrence".

**5.** When this Policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**6.** If the return premium is not refunded with the notice of cancellation or when this Policy is returned to us, we will mail or with your written approval electronically transfer the refund within 15 working days, either after the date cancellation takes effect, or after our receipt of your request to cancel the Policy, whichever is later.

Proof of mailing or "electronic transmittal" is sufficient proof of notice.

**D. Nonrenewal**

**1.** We may elect not to renew this Policy. We may do so by delivering to the first named insured, mailing to the first named insured at the mailing address shown in the Declarations, or "electronically transmitting" to the first named insured, written notice, together with the specific reasons for nonrenewal.

If we nonrenew a policy pursuant to **1.a.** or **1.c.(1)** below, we will also notify any additional named insured shown in the Declarations at their mailing address shown in the Declarations.

Proof of mailing or "electronic transmittal" is sufficient proof of notice.

**a.** If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the "residence premises" has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency, then, during the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the dwelling or other structure located on the "residence premises", we may elect not to renew this Policy only if:

**(1)** You have not paid the renewal premium;

**(2)** There has been a material misstatement or fraud related to the claim;

**(3)** We determine that you have unreasonably caused a delay in the repair of the dwelling or other structure; or

**(4)** We have paid policy limits.

We may do so by letting you know at least 45 days before the expiration date of the Policy.

Unique Code : CAA-FBH-BCAJ-CCCHCABJE-BCJCDBI-C Page 67 of 69

**b.** We shall be entitled to collect any additional premium required to keep the Policy in effect during this period.

However, this provision **(D.1.b.)** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the extension.

**c.** If the conditions described in Paragraph **D.1.a.** do not apply, we may elect not to renew this Policy by providing the following notice before the expiration date of this Policy:

**(1)** When nonrenewal is for:

**(a)** A Policy that has been assumed by an authorized insurer offering replacement or renewal coverage to you; or

**(b)** A risk that has received an offer of coverage from an authorized insurer that is equal to or less than Citizens' renewal premium for comparable coverage, pursuant to Citizens' policyholder eligibility clearinghouse program;

we will give the first named insured at least 45 days written notice before the expiration of this Policy.

**(2)** For all other nonrenewals, we will give the first named insured at least 120 days written notice before the expiration of this Policy.

**d.** Depopulation Provision.

**(1)** Under this provision, the Citizens Property Insurance Corporation ("Citizens") may nonrenew this Policy under the following conditions:

**(a)** If we or the Florida Market Assistance Program obtain an offer from an authorized insurer to cover the property described in the Declarations, at approved rates, except as otherwise provided in Florida law.

**(b)** This Policy may be replaced by a policy that may not provide coverage identical to the coverage provided by Citizens.

**(2)** Acceptance of Citizens coverage by you creates a conclusive presumption that you are aware of this potential.

**2.** We will not nonrenew this Policy:

**a.** On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**b.** On the basis of a single claim which is the result of water damage, unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property;

**c.** On the basis of filing of claim(s) for "sinkhole loss"; unless:

**(1)** The total of such payments equals or exceeds the policy limits of coverage for the Policy in effect on the date of loss, for property damage to the "principal building"; or

**(2)** You have failed to repair the structure in accordance with the engineering recommendations upon which any payment or policy proceeds were based;

**d.** On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or members of the "insured's" household; or

**e.** On the basis of credit information available in public records.

**3.** If the date of nonrenewal becomes effective during a "hurricane occurrence":

**a.** The expiration date of this Policy will not become effective until the end of the "hurricane occurrence"; and

**b.** We shall be entitled to collect additional premium for the period the Policy remains in effect.

However, this provision **(D.3.)** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the "hurricane occurrence"

**E. Assignment**

Assignment of this Policy will not be valid unless we give our written consent.

Unique Code : CAA-FBH-BCAJJ-CCCHCABJE-BCJCDBI-C Page 68 of 69

**F. Salvage**

We may permit you to keep damaged insured property after a loss. If we permit you to keep damaged insured property, we will reduce the amount of loss proceeds payable to you under the Policy by the value of the salvage.

**G. Subrogation**

1. An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

2. If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

3. Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property of Others under SECTION **II** – Additional Coverages.

**H. Inspections And Surveys**

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged.

    We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. This condition applies not only to us, but also to any rating, advisory, inspection service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**I. Notification Regarding Access**

A company employee adjuster, independent adjuster, attorney, investigator, or other persons acting on behalf of us that needs access to an insured or the claimant or to the insured property that is the subject of a claim must provide at least 48 hours' notice to the insured or the claimant, public adjuster, or legal representative before scheduling a meeting with the claimant or an onsite inspection of the insured property.

The insured or the claimant may deny access to the property if notice has not been provided. The insured or the claimant may waive the 48-hour notice.

**J. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the Policy at the time of death;

2. "Insured" includes:

    a. Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

    b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

**K. Renewal Notification**

If we elect to renew this Policy, we will let the first named insured know, in writing:

1. Of our decision to renew this Policy; and

2. The amount of renewal premium payable to us.

This notice will be delivered to the first named insured, mailed to the first named insured at the mailing address shown in the Declarations, or "electronically transmitted" to the first named insured, at least 45 days before the expiration date of this Policy.

Proof of mailing or "electronic transmittal" is sufficient proof of notice.

**L. Document Transmittal**

Upon affirmative election by you for Citizens to deliver policy documents by electronic means in lieu of delivery by mail, we may "electronically transmit" any document or notice to you.

Proof of "electronic transmittal" is sufficient proof of notice.

**IN WITNESS WHEREOF, Citizens Property Insurance Corporation has executed and attested these presents.**

*Barry J. Gilway*

**Citizens Property Insurance Corporation**

Unique Code : CAA-FBH-BCAJ-CCHCABJE-BCJCDBI-C Page 69 of 69

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.